NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0707-17T2

RADIATION DATA, INC.,

      Plaintiff-Respondent,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION, PAUL ORLANDO,
JENNIFER GOODMAN, and ANITA
KOPERA,

      Defendants-Appellants,

and

BOB MARTIN, PAUL BALDAUF,
CHARLES RENAUD, and
HERBERT ROY,

      Defendants.

_____

> APPROVED FOR PUBLICATION
>
> **November 2, 2018**
>
> **APPELLATE DIVISION**

Argued October 9, 2018 – Decided November 2, 2018

Before Judges Sabatino, Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1260-16.

Robert J. McGuire, Deputy Attorney General, argued the cause for appellants (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant

Attorney General, of counsel; Robert J. McGuire and Benjamin H. Zieman, Deputy Attorney General, on the briefs).

David J. Singer argued the cause for respondent (Vella, Singer and Associates, PC, attorneys; David J. Singer and Lisa M. Leili, of counsel and on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

On leave granted, the New Jersey Department of Environmental Protection ("DEP") and three individual DEP officials named as co-defendants in this civil action appeal the Law Division's June 30, 2017 interlocutory order insofar as it partially denied defendants' motion to dismiss plaintiff's claims asserting constitutional and certain statutory violations.

Because we are persuaded the trial court misapplied principles of qualified immunity from suit in partially denying the dismissal motion, we reverse the court's ruling and remand for further proceedings to adjudicate the remaining counts of plaintiff Radiation Data, Inc.'s ("RDI's") complaint. The agency did not violate "clearly established" equal protection and due process rights by pursuing a regulatory enforcement action against plaintiff, and by directing that communications between plaintiff and the agency be channeled through their respective attorneys while the contentious administrative litigation was ongoing.

I.

Briefly stated, the backdrop of this matter is as follows.[1] RDI is a New Jersey corporation and is the largest radon measurement business in the State. RDI has been certified periodically by the DEP to provide radon services pursuant to the Radiation Protection Act, N.J.S.A. 26:2D-1 to -89, and associated regulations, N.J.A.C. 7:28-27.1 to -27.35. The regulatory program is administered through the DEP's Radon Section.

Between August 2009 and June 2010, the DEP issued six Administrative Orders and Notices of Prosecution ("AO/NOP") to RDI. RDI requested adjudicatory hearings for each of the six AO/NOPs. The matters were transmitted to the Office of Administrative Law ("OAL") and consolidated. On March 14, 2013, an Administrative Law Judge ("the first ALJ") issued a partial summary decision on the six AO/NOPs. The first ALJ found in favor of the DEP on all but two of the violations in the AO/NOPs.

The DEP then issued three additional AO/NOPs against RDI in February 2011, June 2013, and December 2014. RDI requested an administrative hearing before the OAL on these additional claimed violations. The matter was

---

[1] For a more comprehensive discussion of the related administrative litigation involving the DEP and RDI, we refer to our unpublished opinion issued today in A-1777-17. In that opinion, we affirmed the DEP's findings of regulatory violations in part, and reversed and remanded them in part.

tried on intermittent days before a second Administrative Law Judge ("the second ALJ") between October 2015 and February 2016.

Ultimately, on June 28, 2017, the second ALJ issued a lengthy decision finding the DEP had proven a majority of the violations. RDI filed exceptions to those findings with the DEP Commissioner. On November 1, 2017, the Commissioner issued a final agency decision adopting the decision of both ALJs, with slight modification. RDI's appeal in A-1777-17 ensued. Given the pendency of that appeal, the DEP has yet to bring a penalty enforcement action against RDI based on the violations.

Meanwhile, in September 2016, RDI filed the present civil action in the Law Division against the DEP and various DEP officials.[2] In general, the lawsuit alleges defendants retaliated against RDI after the company contested the AO/NOPs issued by the agency.

More specifically, RDI alleges that defendants engaged in a "pattern of harassing, intimidating, discriminatory, and threating conduct." RDI contends this retaliation began in September 2015, approximately one month before the OAL hearing before the second ALJ, and continued through the trial. The alleged misconduct includes: refusing to respond to RDI's telephone calls and emails regarding business and compliance matters because of the pending

---

[2] Several named officials have since been dismissed from the case.

4                                                                    A-0707-17T2

OAL hearing; and prohibiting RDI from hand-delivering a license renewal form to the DEP's offices. In addition, RDI contends DEP officials made several threatening remarks to or about RDI, refused to meet with an RDI representative, and that one DEP official uttered an anti-Semitic slur about the President of RDI.

As amended, RDI's complaint asserts claims of equal protection, procedural due process, and substantive due process violations of the New Jersey Constitution, the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -49; and tortious interference with prospective economic advantage. Although it is not expressly pled in its complaint, RDI also relies on the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 ("NJCRA"). Only the constitutionally-based and NJCRA claims are presently at stake in this interlocutory appeal.

Shortly after the filing of RDI's lawsuit, a trial judge denied RDI's ex parte motion for temporary restraints. Thereafter, the judge conducted a hearing and issued a preliminary injunction that partially granted relief to RDI. The judge found that RDI had failed to demonstrate a sufficient nexus between defendants' alleged misconduct and any irreparable harm to RDI. However, the preliminary injunction requires defendants to accept email communications from RDI and respond within one business day if the email is not marked

"urgent," or respond within one hour if the email is so marked and is transmitted within business hours. The injunction also requires RDI to submit documents to DEP by regular, certified, or overnight mail during the pendency of the litigation.[3]

Defendants moved to dismiss various claims asserted in the complaint. Most pertinent to the present appeal, defendants invoked principles of qualified immunity and argued that RDI's constitutional and NJCRA claims must be dismissed because defendants violated no "clearly established" laws in their alleged interactions with RDI and its representatives.

A second trial judge heard oral argument on defendants' motions. Following that argument, the second judge allowed the LAD claim and the tortious interference claim to continue against the DEP and the remaining individual defendants in their official capacities. The judge also allowed RDI's constitutional claims of equal protection and substantive due process violations and the related NJCRA claims to proceed against three individual defendants in their unofficial capacities. The judge found that RDI's claims "implicate clearly established constitutional or statutory right[s] and [as] such [present] an issue that the court will consider when, and if, summary judgment motions

---

[3] Defendants have not sought leave to appeal the terms of the preliminary injunction.

based on [same] are filed."  The judge denied defendants' ensuing motion for reconsideration.

Thereafter, defendants moved for leave to appeal solely the judge's denial of its dismissal motion based on qualified immunity.  Defendants have not sought review of the continuation of the LAD and tortious interference counts.

## II.

Our review of a ruling on a motion to dismiss a complaint for failure to state a cause of action is de novo.  As such, "we apply a plenary standard of review . . . [and] owe no deference to the trial court's conclusions."  Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011) (citing Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005)).

Applying the same standard under Rule 4:6–2(e) that governed the trial court, we are required to "examin[e] the legal sufficiency of the facts alleged on the face of the complaint . . . ."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).  We therefore accord RDI the benefit of "'every reasonable inference of fact' and read the complaint in the light most favorable to plaintiff."  Jenkins v. Region Nine Hous. Corp., 306 N.J. Super. 258, 260 (App. Div. 1997) (quoting Printing Mart, 116 N.J. at 746).  In doing

so, however, we must adhere to the applicable standards of the law, in this instance the law of qualified immunity.

Qualified immunity shields government officials from civil liability unless a plaintiff pleads facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). New Jersey's qualified immunity doctrine tracks the federal standard. Brown v. State, 230 N.J. 84, 98 (2017).

Where applicable, qualified immunity protects public officials "from personal liability for discretionary actions taken in the course of their public responsibilities, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown, 230 N.J. at 97–98 (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015)). Courts reviewing qualified immunity claims are free to address the two prongs in either order. Morillo, 222 N.J. at 118 (citing al–Kidd, 563 U.S. at 735); see also Pearson v. Callahan, 555 U.S. 223, 236 (2009) (instructing that courts are no longer required to consider the two prongs of qualified immunity in sequential order).

Particularly germane to the present appeal is the "clearly established" prong. A government official's conduct violates clearly established law when,

at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear that a reasonable official understands that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Gormley v. Wood-El, 218 N.J. 72, 113 (2014) (quoting Creighton, 483 U.S. at 640).

In White v. Pauly, 580 U.S. ___, 137 S. Ct. 548, 552 (2017), the United States Supreme Court reiterated the strict standard for what constitutes a "clearly established" right:

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." al-Kidd, 563 U.S. at 742. As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Creighton, 483 U.S. at 639.
>
> [(Emphasis added).]

Although a published opinion directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." al–Kidd, 563 U.S. at 741 (emphasis added).

A-0707-17T2

The strong policy rationale for qualified immunity is well recognized. See Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982); Creighton, 483 U.S. at 638; Pearson, 555 U.S. at 231. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. The doctrine is intended to "avoid excessive disruption of government and permit the resolution of many insubstantial claims . . . ." Harlow, 457 U.S. at 818. Indeed, the United States Supreme Court has expressed concern about the general cost of subjecting public officials to the risks of litigation, which include not only potential liability for monetary damages, but also "distraction . . . from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (citing Harlow, 457 U.S. at 816).

Furthermore, because qualified immunity "'is an immunity from suit rather than a mere defense to liability' [it] is effectively lost if the case is allowed to go to trial." Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000) (emphasis in original) (quoting Mitchell, 472 U.S. at 526). Typically, the "application of the defense of qualified immunity is a legal question for the

court rather than the jury; therefore, the defense should be raised and resolved 'long before trial.'" Brown, 230 N.J. at 98 (citations omitted).

"[T]he trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Crawford-El v. Britton, 523 U.S. 574, 597-98 (1998); see also Mitchell, 472 U.S. at 526 (noting that qualified immunity is intended to avoid "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery."). Therefore, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526 (emphasis added).

RDI alleges defendants violated RDI's right to equal protection guaranteed under the New Jersey Constitution. That equal protection claim essentially hinges on the following factual allegations: (1) defendants declined to speak to RDI on the phone, and DEP employees were instructed to stop cooperating with RDI and to refuse to provide RDI with any help, and those communication limitations did not apply to other similarly-situated radon companies (i.e., a disparate treatment claim); (2) defendants did not pursue enforcement actions against other radon companies for the same kinds of

11

violations allegedly committed by RDI (i.e., a selective enforcement claim); (3) defendants denied RDI equal access to DEP offices and staff, as required by the regulation; (4) defendants retaliated against RDI for requesting OAL hearings by issuing unjustified violations; and (5) defendants harassed, intimidated, and threatened RDI during the pendency of the OAL hearings.

As the trial court noted, RDI's equal protection claims boil down to a "class-of-one" theory. In Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), the United States Supreme Court recognized the class-of-one doctrine under equal protection jurisprudence. A class-of-one theory permits a plaintiff to bring an equal protection claim alleging that plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Ibid. In Olech, 528 U.S. at 563, the plaintiff Olech alleged that Village officials demanded she provide a thirty-three-foot easement as a condition of connecting her property to the municipal water supply. However, the Village had only required a fifteen-foot easement from other similarly-situated property owners. Olech alleged that the Village's demand was "irrational and wholly arbitrary" and was done in retaliation after Olech had filed previous, unrelated litigation against the Village. Ibid. In its per curiam opinion, the United States Supreme Court affirmed the Seventh

Circuit's judgment, which had held that the plaintiff adequately alleged an equal protection violation. Id. at 565.

New Jersey courts likewise have recognized such a class-of-one theory, where it is supported by the facts. See, e.g., Paul Kimball Hosp., Inc. v. Brick Twp. Hosp., Inc., 86 N.J. 429, 448 (1981).

A class-of-one theory requires a plaintiff to prove: (1) the defendant intentionally treated him differently from others similarly-situated; and (2) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2009). Regarding the first element, "[p]ersons are similarly-situated under the Equal Protection Clause when they are alike in 'all relevant aspects' . . . ." Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (emphasis added) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). See also Griffin Indus., Inc. v. Irvin, 496 F.3d 1189 (11th Cir. 2007) (rejecting a class-of-one equal protection claim where the plaintiff company charged by state regulators with environmental violations failed to establish that other companies not likewise charged were actually similarly-situated). As the court noted in Irvin, 496 F.3d at 1203-04, where the government's regulatory action is based on "multi-dimensional" factors and "varied decision-making criteria," a class-of-one equal protection claim is more difficult to establish.

Here, it is patently clear from the administrative record in the related appeal that the DEP's enforcement action against RDI was "multi-dimensional," involving a host of regulatory subjects spanning from radon sampling, radon measurement, radon testing, radon mitigation, and radon detection equipment sales. The Law Division complaint does not identify any other particular certified radon measurement and mitigation business in New Jersey that is similarly-situated.

As RDI acknowledges, it is the largest radon measurement company in this State, owning about half of the industry's market share. The decision to charge such a dominant market leader for regulatory violations does not bespeak selective enforcement, since no other competitor appears to be similarly-situated in size or market share. Government is "afforded broad discretion to decide whom to prosecute based on such factors as strength of case and general deterrence value." Twp. of Pennsauken v. Schad, 160 N.J. 156, 183 (1999); see also State v. Ballard, 331 N.J. Super. 529, 539 (App. Div. 2000) (likewise recognizing this principle).

Nor is RDI similarly-situated to other radon companies with respect to the DEP's decision to channel communications between RDI and the DEP through counsel while their highly contentious administrative litigation was ongoing. Given the contentious adversarial context, it was not discriminatory

or unreasonable for the DEP to take protective steps to have the adverse parties communicate through their attorneys while the acrimonious regulatory case was pending. No other company has been identified that was embroiled in an equivalent adversarial proceeding with the DEP Radon Section. The requirement of "similarly-situated" parties is simply not met.

Turning to the second prong of whether the agency had a reasonable basis for undertaking certain stringent actions with respect to RDI, we concur with the DEP that such a basis is present here. The administrative case involved numerous charges of regulatory violations by RDI, most of which were sustained by the two ALJs who served as independent fact-finders, and many of which we have upheld today in our partial affirmance of the Commissioner's final agency decision. The history of RDI's regulatory non-compliance, and the adversarial context existing while the administrative case was pending, justified the DEP in taking reasonable steps to protect its litigation interests.

Indeed, the mutual adversarial intensity appears to have become progressively worse as the administrative hearings went forward. The record reflects that at one point the DEP threatened to get the police involved. The DEP asserts that it began limiting and channeling RDI's contacts with staff in the Radon Section out of a concern that RDI might use such contacts to

15

generate possible statements against interest that could be used against the DEP in the administrative litigation. For instance, as the second ALJ noted in her findings, during the eighteen months while the OAL case was pending, the DEP received about 250 phone calls and emails from RDI, compared to about 300 phone calls and emails it received from the other twenty-nine radiation mitigation businesses combined. That statistic bolsters both our determination that RDI was not similarly situated to other radon companies, and also that the DEP had at least colorable reasons for treating its communications with RDI's representatives differently.

The DEP's decision to channel communications between the adverse parties through counsel, rather than through staff, also is consistent with the public policies underlying Rule of Professional Conduct ("RPC") 4.2. In pertinent part, RPC 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter . . . ." RPC 4.2. The rule contains certain exceptions, including situations where the communication is "authorized by law." Ibid.

We recognize the literal terms of RPC 4.2 do not apply here, because there is no claim that RDI's counsel was attempting to communicate directly

16

with staff in the DEP's Radon Section while the DEP was being represented by its own counsel in the ongoing administrative case. Even so, the DEP had a legitimate interest in channeling communications through the parties' respective counsel to assure that further staff-to-staff communications did not become evidential fodder in the administrative litigation.[4]

Stated differently, RDI had no "clearly established right" to dictate how this particular government agency was to communicate with RDI while the hotly-contested litigation was ongoing. Government must retain the discretion to respond to private parties in a manner it finds most efficient and effective. The fact that the DEP's website for the radon program generically advises the public to contact the Radon Section directly with questions[5] is immaterial, given the distinctive setting of ongoing litigation between the DEP and an entity it regulates. So long as the DEP responds to an adversary's inquiries within a reasonable time and in a reasonable manner, no "clearly established" right of access to government has been infringed. Although we recognize the DEP could have been more courteous and cooperative when it declined to

---

[4]  We do not read the "authorized by law" proviso in RPC 4.2 to preclude an agency from choosing to have outside inquiries from an adverse party handled by the agency's attorneys instead of its staff, as long as the means of access and the agency's response time is reasonable.

[5]  See N.J.A.C. 7:28-27.3(i).

accept a hand-delivery of RDI's license renewal material from RDI's President, that isolated incident does not suffice to defeat defendants' assertion of qualified immunity, particularly since there was still ample time for the renewal application to be received and processed.

In short, RDI's claims of an equal protection violation – even viewing the facts alleged in the complaint in a light most favorable to the company – fall short of presenting a viable cause of action under constitutional principles. Defendants are entitled as a matter of law to qualified immunity dismissing those claims.

The same analysis and legal conclusion essentially extend to RDI's claims of a constitutional deprivation of due process. It is well established that the right to engage in common occupations of life "free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the . . . [federal] Fourteenth Amendment." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994) (citing Greene v. McElroy, 360 U.S. 474, 492 (1959)). The New Jersey Constitution recognizes similar principles. See N.J. Const. art. I, ¶ 1; see also Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 366 (1996). However, this is not an open-ended right.

In <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998), the United States Supreme Court illuminated the due process standard that applies when a plaintiff alleges that an action taken by an executive branch official, or as in the present case, a regulatory agency, violated substantive due process. The Court held in <u>Lewis</u>, 523 U.S. at 845-46, that because the "touchstone of due process is the protection of the individual against arbitrary action of the government[,]" only the "<u>most egregious</u> official conduct can be said to be 'arbitrary in the constitutional sense.'" (Emphasis added). The "substantive component of the Due Process Clause is violated by executive action only when it '<u>can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense</u>.'" <u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington</u>, 316 F.3d 392, 399 (3d Cir. 2003) (emphasis added) (quoting <u>Lewis</u>, 523 U.S. at 847).

The Supreme Court of New Jersey has likewise recognized and adopted the "conscious shocking" test for substantive due process claims. <u>See</u> <u>Gormley</u>, 218 N.J. at 112 (applying the "conscious shocking" test to a state-created danger claim asserted by plaintiff alleging a substantive due process violation).

For the reasons we have already expressed with respect to the immunized equal protection claims, we conclude that defendants are similarly

19

entitled to qualified immunity with respect to RDI's due process infringement allegations. The conduct alleged by RDI did not infringe upon any "clearly established" constitutional rights of RDI. The DEP's decisions to pursue regulatory violations against RDI and to channel communications through counsel as the administrative case became increasingly contentious do not "shock the conscience."

Lastly, we reject RDI's argument that defendants' actions violated a clearly established statutory right under the NJCRA or otherwise. The only statutory right that properly remains in the case is the LAD claim of alleged religious or ethnic discrimination. That pending claim is unaffected by the present interlocutory appeal.[6]

These substantive points aside, we add that we discern no need to withhold immunity-based dismissal, pending discovery. As we have noted, qualified immunity is not simply immunity from a final judgment, but is immunity from suit. See Mitchell, 472 U.S. at 526 (finding qualified immunity is intended to avoid "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery."). The claims of constitutional deprivation are ripe in this case for dismissal on immunity

---

[6]  Our comments in this regard should by no means suggest approval or tolerance of any religious or ethnic slurs that may be proven to have been uttered by any DEP representative.

grounds. There is no need for discovery on those claims. Discovery on the remaining LAD and tortious interference claims, however, is left to the trial court's pre-trial case management and discretion.

The trial court's orders are therefore reversed with respect to defendants' assertion of qualified immunity. The matter is remanded for the trial court to adjudicate solely the open LAD and tortious interference claims.

Reversed and remanded. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0707-17T2