NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0473-18T3

JOSEPH DIBUONAVENTURA,

      Plaintiff-Appellant,

v.

WASHINGTON TOWNSHIP,
ROBERT SMITH, and RAFEAL
MUNIZ, in their individual and
official capacities,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
|---|
| **January 31, 2020** |
| **APPELLATE DIVISION** |

Argued December 10, 2019 – Decided January 31, 2020

Before Judges Accurso, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1435-13.

Jacqueline M. Vigilante argued the cause for appellant (The Vigilante Law Firm, PC, attorneys; Jacqueline M. Vigilante and Kelly Anne Hicks, on the briefs).

Patrick Joseph Madden argued the cause for respondents Washington Township and Rafael Muniz (Mark William Strasle, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

Plaintiff Joseph DiBuonaventura is a former Washington Township police officer who was terminated for misconduct. He appeals from orders granting summary judgment to defendants, the Township and two Township officials, and dismissing with prejudice his claims alleging violations of his constitutional equal protection rights and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. He also appeals from an order denying his motion for partial summary judgment on his CEPA claims.

We conclude that our state constitution should be construed consistent with the federal constitution in that a "class-of-one" equal protection claim cannot be asserted by a public employee. See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 594 (2008). Accordingly, we affirm the dismissal of plaintiff's equal protection claim. We also affirm the dismissal of plaintiff's CEPA claims because those claims were precluded when he asserted retaliation as a defense in the administrative proceedings upholding his termination. Therefore, plaintiff cannot relitigate the retaliation issue in a CEPA action. See Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67 (2012).

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to plaintiff. Plaintiff was a police officer in Washington Township in Gloucester County.

In 2011 and 2012, plaintiff made several complaints about the conduct of the Washington Township Police Department and the chief of police, Rafael Muniz. During that same period of time, plaintiff engaged in activities that resulted in his suspension and termination as a police officer.

Plaintiff's complaints about the police department and its chief focused on two events. First, plaintiff complained about an alleged ticket-fixing incident related to a traffic stop he made on September 11, 2011. On that date, plaintiff issued a motorist two tickets for driving with an expired registration and license. In November 2011, plaintiff filed an internal affairs complaint with the police department after he learned that the tickets had been dismissed and the motorist was a relative of a Township police captain. In February 2012, plaintiff was informed that Internal Affairs had conducted an investigation but had concluded that plaintiff's allegations of ticket-fixing were unfounded.

Plaintiff's second complaint concerned Chief Muniz and his alleged activities to prevent a close relative from being arrested and criminally charged for theft. Plaintiff contended that in April 2012, he learned that an adult relative

of Chief Muniz was caught stealing approximately $7000 in jewelry from a home in Washington Township. According to plaintiff, the investigation was manipulated so that the chief's relative was never arrested or charged with any crime. In June 2012, plaintiff reported the incident to the Township's Business Administrator. In August 2012, he filed a complaint concerning the incident with the Gloucester County Prosecutor's Office, which later determined that plaintiff's allegations were unfounded.

Plaintiff's suspension and termination arose out of a motor vehicle stop on July 31, 2012. On that day, plaintiff stopped a motor vehicle driven by Assemblyman Paul Moriarty, who was the former Mayor of Washington Township. Plaintiff arrested Moriarty and charged him with driving while under the influence (DUI), N.J.S.A. 39:4-50, refusal to submit to an alcohol breath test, N.J.S.A. 39:4-50.4(a), and improper lane change, N.J.S.A. 39:4-88. Moriarty strongly disputed the charges and filed an internal affairs complaint and a criminal complaint against plaintiff. In November 2012, plaintiff was suspended without pay from his position as a police officer. Thereafter, he was indicted on criminal charges related to the arrest and ticketing of Moriarty, but in March 2015, a jury acquitted plaintiff of all criminal charges.

Following his criminal acquittal, the Township's police department conducted an internal affairs investigation of plaintiff's conduct and continued his suspension. In April and May 2015, plaintiff was charged with misconduct for two separate matters. First, he was charged with misconduct related to his stop and arrest of Moriarty. Specifically, plaintiff was charged with making false statements and omitting material facts about the stop and about his prior encounters with Moriarty. Second, he was charged with falsely reporting that he issued numerous warnings for motor vehicle violations. An investigation found that those warnings were never given to the motorists. The false reports allegedly occurred between May 2012 and October 2012.

Based on those misconduct charges, the Township sought to fire plaintiff. In accordance with his rights as an employee of a non-civil service jurisdiction, plaintiff sought an administrative disciplinary hearing before a neutral hearing officer. N.J.S.A. 40A:14-150. Evidentiary hearings on both misconduct charges were conducted, and the hearing officer found plaintiff guilty of the charges. Regarding the charges related to the Moriarty stop and arrest, the hearing officer found that plaintiff had falsified his arrest reports and lied about his prior encounters with Moriarty. Concerning the charges of reporting fictitious warnings, the hearing officer also found plaintiff guilty of misconduct.

Accordingly, the hearing officer upheld plaintiff's termination as a police officer.

As was his right in connection with his disciplinary remedies, plaintiff sought review by a Superior Court judge. N.J.S.A. 40A:14-150. Following oral argument, the Law Division judge conducted a de novo review of the extensive administrative record and issued a sixty-one-page written decision finding plaintiff had engaged in misconduct and upholding plaintiff's termination. The Law Division judge based the termination decision on plaintiff's misconduct concerning the Moriarty stop and arrest and held that, taken on their own, the fictitious warnings did not warrant termination. In assessing the fictitious warning case, the Law Division judge also considered plaintiff's disparate treatment argument that another police officer who had also issued fictitious warnings had only received a one-day suspension. The Law Division judge rejected that as a viable defense and noted that the disparate treatment argument was only relevant to the issue of the appropriate discipline.

Plaintiff appealed from the Law Division order, but we rejected his arguments and affirmed that order in an unpublished opinion. DiBuonaventura v. Washington Twp., No. A-2212-17 (App. Div. Mar. 25, 2019).

Meanwhile, in October 2013, before the disciplinary charges were filed, plaintiff filed this action against the Township, Chief Muniz, and the Township's Business Administrator. In his complaint, which was later amended, he alleges violations of his equal protection rights and of CEPA.[1] The complaint also alleged common law slander, libel, and defamation. Those common law claims, however, were dismissed and plaintiff is not appealing from those dismissals.

The parties to the civil action engaged in and completed discovery. Defendants then moved for summary judgment, contending that plaintiff did not have a viable equal protection claim because such claims were not available to public employees. See Engquist, 553 U.S. at 594. Defendants also argued that plaintiff's CEPA claims were precluded under principles of collateral estoppel as applied by our Supreme Court in Winters. In response, plaintiff opposed defendant's motions and cross-moved for partial summary judgment contending that he had established a prima facie case under CEPA.

The trial court heard oral argument and, on September 4, 2018, issued orders (1) granting summary judgment to defendants and dismissing with prejudice plaintiff's constitutional and CEPA claims; (2) denying plaintiff's

---

[1] Plaintiff only provided us with the second amended complaint and the record does not include the original complaint.

A-0473-18T3

cross-motion for partial summary judgment on his CEPA claims; and (3) granting summary judgment to defendants and dismissing with prejudice plaintiff's slander, libel, and defamation claims.

The trial court explained the reasons for its ruling in a seventeen-page written opinion issued with its orders. The court adopted the reasoning of the United States Supreme Court in Engquist and held that a class-of-one equal protection claim is not available in the public employment context. The court also found that plaintiff raised retaliation as a defense in the administrative disciplinary proceedings and, therefore, was estopped from relitigating the retaliation issue in his CEPA action. In that regard, the trial court found that our Supreme Court's decision in Winters controlled. The trial court also went on to evaluate the merits of plaintiff's CEPA claim. The court found that plaintiff had not established a prima facie case under CEPA because the Township had established that it had terminated plaintiff for misconduct.

Plaintiff now appeals from the orders granting summary judgment to defendants, dismissing his constitutional and CEPA claims, and denying him partial summary judgment on his CEPA claims. As already noted, plaintiff is not appealing the order dismissing his claims of slander, libel, and defamation.

On appeal, plaintiff raises three arguments. He contends that the trial court erred in (1) granting summary judgment and dismissing his class-of-one equal protection claim; (2) granting summary judgment and dismissing his CEPA claims; and (3) denying his motion for partial summary judgment as to his prima facie case under CEPA. We are not persuaded by any of these arguments. We analyze his constitutional equal protection claim and then his CEPA claims. Because we conclude that plaintiff is estopped from relitigating his retaliation claims, we need not reach plaintiff's contention that he established a prima facie case under CEPA.

Initially, we identify our scope of review. We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment will be granted when "the evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact," and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Claire's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c).

A.    Plaintiff's Class-of-One Equal Protection Claim

In count one of his complaint, plaintiff asserts that defendant Muniz violated his equal protection rights under the New Jersey Constitution.  In that regard, plaintiff contends that while he is not part of a protected class, he was treated differently from other police officers in retaliation for his "protected" activities.

In some circumstances, an equal protection claim can be asserted even when the plaintiff has not alleged discrimination on the basis of membership in a protected class.  Engquist, 553 U.S. at 598.  Such "class-of-one" claims require that a plaintiff show that he or she was (1) intentionally treated differently from other people who are similarly situated, and (2) there is no rational basis for the difference in treatment.   Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); accord Paul Kimball Hosp., Inc. v. Brick Twp. Hosp., Inc., 86 N.J. 429, 448 (1981); Radiation Data, Inc. v. N.J. Dep't of Envtl. Prot., 456 N.J. Super. 550, 562 (App. Div. 2018).

Plaintiff concedes, as he must, that the United State Supreme Court has ruled that Fourteenth Amendment class-of-one claims do not apply to public employment.  Engquist, 553 U.S. at 594.  In Engquist, the Court interpreted the equal protection clause of the federal Constitution, as applied to the states

through the Fourteenth Amendment, and held that a public employee cannot state a claim under the Equal Protection Clause by alleging that she was fired from her job for arbitrary and malicious reasons that essentially singled her out as a class-of-one. Ibid. Specifically, plaintiff argued that she was denied a promotion, and ultimately laid-off because of a grudge held by a supervisor. Ibid. The Court reasoned that the Equal Protection Clause is not implicated in circumstances where "government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." Id. at 605. The Court went on to reason that the class-of-one theory of equal protection is simply a "poor fit in the public employment context" and that to treat employees differently is not to "classify them in a way that raises equal protection concerns," but rather is "simply to exercise the broad discretion that typically characterizes the employer-employee relationship." Ibid.

Plaintiff argues that New Jersey should adopt a different rule when applying the equal protection concepts embodied in New Jersey's Constitution. See N.J. Const. art. I, ¶ 1. In making that argument, plaintiff cites to our Supreme Court's decision in Greenberg v. Kimmelmann, 99 N.J. 552 (1985). In Greenberg, the Court stated, that in certain circumstances, "analysis of

11

fundamental rights under the New Jersey Constitution differs from analysis of those rights under the United States Constitution." Id. at 567. Neither our Supreme Court nor this court has yet to address in a published opinion whether New Jersey will apply the Engquist holding to the equal protection concepts protected by New Jersey's Constitution.

Contrary to plaintiff's contention, we perceive no need, and indeed a substantial downside to adopting under the New Jersey Constitution the class-of-one theory. As the United States Supreme Court held under the federal Constitution, we hold under the New Jersey Constitution that the class-of-one theory is a "poor fit" for analyzing public employment decisions. See Engquist, 553 U.S. at 605. Our Legislature has enacted a comprehensive umbrella of protections for public employees, including the review of public employee disciplinary decisions by a Superior Court judge or the Civil Service Commission. See N.J.S.A. 40A:14-150; N.J.S.A. 11A:2-6. In addition, CEPA, the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and public employee union contracts all serve to protect the interests of public employees in fair treatment.

Constitutionalizing employee grievances would interfere with the discretion required when the government acts as an employer. As Chief Justice

12

Roberts explained in Engquist, recognizing the sort of claim plaintiff presses "could jeopardize the delicate balance governments have struck between the rights of public employees and 'the government's legitimate purpose in promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service.'" 553 U.S. at 607 (alterations in original) (quoting Connick v. Myers, 461 U.S. 138, 150-51 (1983)).

Moreover, the complaint that plaintiff seeks to redress – alleged unequal treatment – is better addressed as a question of progressive discipline in the employee grievance proceedings. In other words, if, as here, a public employee has engaged in misconduct, it is not a defense to claim other employees also engaged in misconduct. Instead, the only relevant issue is whether the employee should be subject to similar or different discipline for the misconduct.

Though we need not reach the merits of plaintiff's class-of-one argument, plaintiff's allegations of disparate treatment illustrate why the remedy is a "poor fit." Engquist, 553 U.S. at 605. Persons are similarly situated under the Equal Protection Clause when they are alike in "all relevant aspects." Radiation Data, 456 N.J. Super. at 562 (citations omitted). Here, plaintiff contends that he was treated differently from two police detectives when he was charged with

misconduct related to the Moriarty stop and arrest. At his disciplinary hearing, plaintiff also argued that he was treated differently from another officer who issued fictitious warnings and received only a one-day suspension. In fact, plaintiff was treated differently because his conduct was different both in kind and degree from the conduct of the two detectives and the other police officer.

Regarding the stop of Moriarty, plaintiff alleges that one of the detectives reported to the other detective that Moriarty was intoxicated at a car dealership. The second detective then passed that information on to plaintiff. It is undisputed, however, that neither of those detectives was involved in the stop and arrest of Moriarty. Accordingly, those detectives were not similarly situated with regard to plaintiff's misconduct arising out of his stop and arrest of Moriarty. As already summarized, plaintiff was found to have lied both in the arrest reports he prepared and in denying that he had had prior encounters with Moriarty.

Regarding the fictitious warnings, plaintiff was not similarly situated to the other officer. While both officers issued a similar number of fictitious warnings, plaintiff also falsified the number of traffic stops he made to improve his apparent performance. The other officer also cooperated fully with the

A-0473-18T3

department's investigation and admitted to all of the charges against him. Thus, that officer's conduct was different from plaintiff's conduct.

B.    Plaintiff's CEPA Claims

In Winters, our Supreme Court held that a plaintiff who unsuccessfully raised retaliation as a defense in a disciplinary proceeding was barred by principles of collateral estoppel from relitigating retaliation claims under CEPA. 212 N.J. at 88. Plaintiff contends that Winters does not apply because he did not raise retaliation as a defense to the misconduct charges in his disciplinary proceedings. Moreover, plaintiff argues that to the extent that retaliation was raised, it was raised in connection with the Moriarty stop and arrest, which is different and distinct from his whistleblower claims. We disagree and hold that Winters applies and bars his CEPA claims.

In Winters, the Court embraced a broad view of estoppel in employee discipline cases. Id. at 86. The Court emphasized that New Jersey has "taken an expansive and flexible approach in the application of equitable defenses." Ibid. (quoting O'Keefe v. Snyder, 83 N.J. 478, 517 (1980) (Handler, J., dissenting)). The Court held that a plaintiff who unsuccessfully raised retaliation as a defense in the opening statement of his disciplinary proceeding was estopped from thereafter bringing a retaliation claim under CEPA even

15

though the administrative proceeding did not explicitly decide the case based on retaliation and the defense was not fully litigated during the administrative proceeding. Id. at 71, 92.

In reaching that conclusion, the Court in Winters determined that a "litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline, raise a retaliation defense . . . and then hold back on the defense in an attempt to save it for later duplicative litigation." Id. at 72-73 (internal citation omitted). Instead, the Court noted that if the employee raises the retaliation defense, both the employee and the employer "must live with the outcome, including its potential preclusive effect on related employment-discrimination litigation as a matter of equitable application of estoppel principles." Id. at 73.

In connection with his CEPA allegations, plaintiff identified two whistleblowing activities: (1) his complaints about ticket-fixing; and (2) his complaints about the manipulation of the investigation of Chief Muniz's relative. The CEPA complaint also makes extensive allegations about the "Moriarty Traffic Stop" and the fictitious warning charges and contends that those two charges resulted from retaliation.

16

Before both the hearing officer and the Law Division judge on de novo review, the plaintiff argued that his discipline was the result of retaliation. The central theme of his defense was that Moriarty was a powerful political figure and plaintiff was being treated unfairly to protect Moriarty and Chief Muniz, who was allegedly closely associated with Moriarty. In making that retaliation claim, plaintiff also raised his complaints about Chief Muniz's relative and the ticket-fixing.

For example, in her opening statement in the misconduct hearing addressing the Moriarty stop, plaintiff's counsel argued that Chief Muniz had a conflict of interest in light of the whistleblowing complaints against him and the chief's connections to Moriarty. During the hearing, plaintiff's counsel also asked questions related to the whistleblowing activity. In that regard, plaintiff's counsel asked Muniz about plaintiff's internal affairs complaints against the police department and him. On de novo review, plaintiff again raised arguments about retaliation contending that Moriarty's status as a prominent assemblyman created a "politically-charged and conflicted backdrop" to the misconduct charges.

These examples illustrate that plaintiff made retaliation a central part of his defense to the disciplinary charges. Even if he did not fully develop those

17

contentions, as in <u>Winters</u>, he nonetheless had the opportunity for a full hearing on his retaliation claims. Consequently, this is not a situation where plaintiff asserted CEPA claims and then expressly reserved his right to pursue those claims in court as opposed to the administrative disciplinary proceedings. See <u>Wolff v. Salem Cty. Corr. Facility</u>, 439 N.J. Super. 282, 301-02 (App. Div. 2015) (Sabatino, P.J.A.D., concurring) (noting that an employee need not raise a retaliation defense in an administrative disciplinary proceeding, but if he voluntarily did, then <u>Winters</u> applies and controls).

We specifically reject plaintiff's argument that he can raise one type of retaliation and preserve his claims as to other types of retaliation. A review of the proceedings both before the hearing officer and on de novo review before the Law Division judge confirms that plaintiff vigorously argued that his misconduct charges were the result of retaliation for arresting and charging Moriarty for DUI. No matter how that argument is cloaked, it is a retaliation claim because plaintiff is contending that he was only being disciplined in retaliation for ticketing a prominent political figure. When read in the light most favorable to plaintiff, his CEPA claim does not necessarily rely on the Moriarty stop as a whistleblowing activity. Nevertheless, the Moriarty stop and the

A-0473-18T3

misconduct that arose from it, is clearly a fundamental part of plaintiff's CEPA claims.

In Winters, the Court expressly rejected this type of throttle-back litigation tactic. The Court also noted that it would be "unseemly" to ask a jury to second-guess the results of an employee discipline hearing after the employee has had a full and fair hearing in administrative proceedings accorded by the Legislature. Winters, 212 N.J. at 74. Indeed, the Court put such employees on notice "that integration of employer-retaliation claims should be anticipated and addressed where raised as part of the discipline review process." Ibid.

In summary, the trial court's decision to grant summary judgment to defendants was correct both on the constitutional and CEPA claims. Because the CEPA claims were precluded from being relitigated, we need not address plaintiff's argument that he established a prima facie case under CEPA. Nevertheless, we note that such an argument would be hard to sustain given the finding that plaintiff had been discharged for engaging in misconduct.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0473-18T3