**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0246-23

IN THE MATTER OF
CHALLENGE BY BLACKRIDGE
REALTY, INC., TO CAFRA
PERMIT ISSUED TO STEVEN
SILVERMAN and 290 OCEAN
LLC, FILE NO. 1325-16-0007.1,
LUP 210001.

_____

Argued March 11, 2025 – Decided April 3, 2025

Before Judges Gooden Brown and Chase.

On appeal from the New Jersey Department of Environmental Protection.

John M. Van Dalen argued the cause for appellant Blackridge Realty, Inc. (Van Dalen Brower, LLC, attorneys; John M. Van Dalen, of counsel and on the briefs).

Jill S. Denyes, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Jason Brandon Kane, Deputy Attorney General, on the brief).

Michael J. Gross argued the cause for respondent 290 Ocean LLC (Giordano, Halleran & Ciesla, attorneys; Michael J. Gross, of counsel and on the brief; Linda M. Lee, on the brief).

PER CURIAM

Blackridge Realty, Inc. ("Blackridge"), appeals the final agency decision of the Department of Environmental Protection ("DEP") approving a permit to 290 Ocean LLC ("290 Ocean") under the Coastal Area Facility Review Act ("CAFRA"), N.J.S.A. 13:19-1 to -45. We affirm.

I.

In January 2021, a CAFRA permit application was submitted by 290 Ocean seeking to construct an apartment building on three vacant and undeveloped lots in the city of Long Branch. The property is located with Ocean Avenue to the east, and a boardwalk and beachfront are east of Ocean Avenue. Ocean Boulevard is to the west, and residential developments are to its immediate north and south. The permit application was for an eight-story, 109-unit residential structure, with 234 parking spaces, on the 1.97-acre site.

Blackridge owns an apartment building at 345 Ocean Avenue, which is immediately north of the property. Blackridge filed a written objection to the permit application, asserting the proposed project violated various aspects of the Scenic Resources and Design ("SRD") Rule, N.J.A.C. 7:7-16.10, set forth in

A-0246-23

CAFRA's promulgating regulations, the Coastal Zone Management ("CZM") Rules, N.J.A.C. 7:7-1.1 to -29.10. Blackridge also alleged the development would have an adverse impact on Blackridge as well as the public in general.

The property is within the coastal area established by CAFRA. In addition, the property lies within an area that is a redevelopment zone ("RDZ"), a designated area in need of redevelopment pursuant to the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -89. Specifically, the property is in the Beachfront South Sector of the RDZ.

After the public had notice and a chance to comment, the DEP denied the permit application. The reasons given for the denial included that the proposed project did not comply with the SRD due to the following: the proposed frontage provided a twenty-five percent view corridor, which was short of the required thirty percent, pursuant to N.J.A.C. 7:7-16.10(d)(1); and the ninety-nine-foot structure was set eighty-eight feet from the inland edge of the boardwalk, but the required distance for a structure that size would be approximately 198 feet, pursuant to N.J.A.C. 7:7-16.10(d)(2).[1]

---

[1] The other reason given was that the proposed project did not comply with the Stormwater Management rules, N.J.A.C. 7:8-1.1 to -6.3, as required by N.J.A.C. 7:7-16.6(a). Stormwater runoff is not an issue raised in this appeal.

290 Ocean asked for reconsideration of the denial, asserting the SRD did not apply because other surrounding buildings also failed to meet the required setback, and the view corridor requirement was not applicable because Ocean Avenue separated the property from the boardwalk. The DEP declined to reconsider. 290 Ocean then requested an adjudicatory hearing, which was granted by the DEP.

In August 2022, in lieu of the adjudicatory hearing, a settlement agreement was reached between 290 Ocean and the DEP. The settlement stipulated that the property lies within the RDZ under an October 15, 2020, amendment to the redevelopment plan. The settlement also stipulated "the [Redevelopment] Ordinances do not require an Open View Corridor and a Step Back as required elsewhere" under the SRD rules at N.J.A.C. 7:7-16.10(d)(1) to (2). The settlement further stated that the "Long Branch Redevelopment Zone Permit [('LBRZP')] does not require compliance with the [SRD]." Additionally, the settlement recounted that the subject property "is only one of two vacant properties within this area of Long Branch where the [p]roperty is separated from the boardwalk by a public road," which "makes this portion of Long Branch unique and unduplicated." The settlement pointed to a revised setback analysis submitted by 290 Ocean where several nearby structures did not have the

required step-back from the dune or boardwalk, concluding the proposed project "will not have a significant adverse effect on the scenic resources of the coastal zone."

The DEP provided Blackridge with a notice of its intent to settle with 290 Ocean. After Blackridge filed a written objection, the DEP approved the CAFRA permit for 290 Ocean, pursuant to the CZM Rules. The permit stated the project was "authorized under and in conditional compliance with the applicable [CZM] Rules . . . as amended through October [15], 2021."

Blackridge appealed the permit and requested an administrative hearing, which was denied by the DEP. The DEP reasoned that under CAFRA there was not "a statutory right for a third-party adjudicatory hearing," and that Blackridge failed to "demonstrate a particularized property interest of constitutional significance." The DEP also found that Blackridge's equal protection rights were not violated as Blackridge did not apply for this permit. Further, DEP explained that "speculative damages" to Blackridge or the public did not amount to a particularized property interest.

On appeal Blackridge argues the following points:

> POINT I: 290 OCEAN VIOLATES ALL REQUIREMENTS OF THE SCENIC RESOURCES AND DESIGN RULE AND THE SETTLEMENT IS AN ARBITRARY, CAPRICIOUS AND

A-0246-23

UNREASONABLE FAILURE TO ENFORCE THE COASTAL ZONE RULE.

POINT II: DEP'S SUBSEQUENT APPROVAL OF THE CAFRA PERMIT FOR 290 OCEAN AFTER ITS EARLIER DENIAL IS AN ILLEGAL WAIVER OF THE SCENIC RESOURCES AND DESIGN RULE UNDER ESTABLISHED CASE LAW.

POINT III: DEP'S WAIVER OF THE SCENIC RESOURCES AND DESIGN RULE DEPRIVES BLACKRIDGE OF DUE PROCESS, FUNDAMENTAL FAIRNESS, AND EQUAL PROTECTION OF LAW.

II.

"[A] 'strong presumption of reasonableness attaches to the actions of the administrative agencies.'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). We accept the factual findings of an administrative agency provided they are supported by sufficient credible evidence, and we may not substitute our

judgment for that of the agency. Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992).

Decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme" are reviewed "under an enhanced deferential standard." East Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). "[G]enerally, when construing language of a statutory scheme, deference is given to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 229 (2016). "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010). A reviewing court is not, however, bound by an agency's interpretation of a statute or its determination of a strictly legal issue outside its charge. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018).

III.

In enacting CAFRA in 1973, the Legislature found "that certain portions of the coastal area are now suffering serious adverse environmental effects."

7

N.J.S.A. 13:19-2. In light of these effects, "all of the coastal area should be dedicated to those kinds of land uses which promote the public health, safety and welfare, protect public and private property, and are reasonably consistent and compatible with the natural laws governing the physical, chemical and biological environment of the coastal area." Ibid.

While declaring its desire to address the adverse environmental effects of coastal area development, the Legislature also recognized economic considerations for those who inhabit the coastal areas, noting that CAFRA was also intended to

> encourage the development of compatible land uses in order to improve the overall economic position of the inhabitants of that area within the framework of a comprehensive environmental design strategy which preserves the most ecologically sensitive and fragile area from inappropriate development and provides adequate environmental safeguards for the construction of any developments in the coastal area.
>
> [Ibid.]

As noted in Seigel v. N.J. Dep't of Env't Prot., "[e]ach agency decision involving an application for development under CAFRA invokes these 'competing policy considerations.'" 395 N.J. Super. 604, 615 (App. Div. 2007) (quoting In re Cape May Cnty. Mun. Utils. Auth., 242 N.J. Super. 509, 516 (App. Div. 1990)). Consistent with the foregoing, CAFRA requires that any rules or regulations

A-0246-23

adopted pursuant thereto "be closely coordinated with the provisions of the State Development and Redevelopment Plan."  N.J.S.A. 13:19-17(b).

"The DEP exercises its statutory authority under CAFRA through the . . . [CZM] Rules."  Raleigh Ave. Beach Ass'n v. Atlantis Beach Club, Inc., 185 N.J. 40, 61 (2005).  Within the CZM rules are the SRD, which are guidelines intended to regulate design elements including visual compatibility, height, view corridor, and setback requirements.  N.J.A.C. 7:7-16.10(b) to (d).

Those same rules also included a special Subchapter, known as the Long Branch Rule, that recognized the unique area of Long Branch and applied special rules only to an area within its redevelopment zone.  See N.J.A.C. 7:7-7.1 to -7.5.  Under this rule, a LBRZP can be issued which "authorizes the construction of any development regulated under [CAFRA] within the [RDZ]," provided certain conditions are met.  N.J.A.C. 7:7-7.1(a).  Developments with the RDZ "shall be in compliance with the [Redevelopment Ordinances]."  N.J.A.C. 7:7-7.1(b)

A project in the RDZ can get a LBRZP from Long Branch or, alternatively, get a CAFRA permit.  N.J.A.C. 7:7-7.1(g).  In 1996, Long Branch adopted the Oceanfront-Broadway Redevelopment Plan, which includes ordinances along with Design Guidelines Handbooks and provides the development rules for each

9

section of the RDZ. Redevelopment Guidelines Handbook 6 ("Handbook 6") specifically applies to the Beachfront South Sector of which 290 Ocean is part. The DEP reviewed and approved the Redevelopment Ordinances as consistent with the CZM Rules. The Redevelopment Ordinances did not require the open view corridor or setback required by the SRD.

On December 9, 2020, Long Branch adopted an amendment to the Redevelopment Ordinances that applied specifically to the 290 Ocean Property pursuant to Ordinance No. 26-20 (the "Redevelopment Plan Amendment").[2] The Redevelopment Plan Amendment was "intended to modify and supersede sections of the . . . Redevelopment Plan," "in a manner that is consistent with the surrounding land uses." Certain area, bulk, off-street parking, and design standards for the property were amended pursuant to the Redevelopment Plan Amendment; however, it did not alter the lack of the SRD Rule provisions as originally provided under the Redevelopment Ordinances.

Blackridge argues the permit approval should be reversed because the proposed project does not comport with the CZM Rules, specifically the SRD Rule. However, in the context of the CZM Rules, as a whole, the SRD Rule

_____

[2] We upheld the legality of the amendment to the plan in Blackridge Realty, Inc. v. The City of Long Branch, and 290 Ocean, LLC, ___ N.J. Super. ___ (App. Div. 2025) (slip op. at 2-4).

does not apply because pursuant to the Long Branch Rule, development of the project is subject to the standards set forth under the Redevelopment Ordinances regardless of whether CAFRA approval was sought pursuant to a Long Branch Redevelopment Permit or an individual permit.  See N.J.A.C. 7:7-7.1(b).

Here, the DEP did not act arbitrarily, capriciously, or unreasonably in granting 290 Ocean the CAFRA permit.  The DEP determined that under the 2020 amendment to the RDZ, the subject property was within the Beachfront South Sector.  The Redevelopment Ordinances do not require the setback and open view corridor required by the SRD.  Moreover, upon reviewing the revised setback survey conducted by 290 Ocean, the DEP determined the proposed project would not be visually incompatible with the existing nearby structures. The setback survey illustrates that out of twenty nearby properties that are forty feet or higher in height, seventeen did not comply with the SRD setbacks. Blackridge's argument that some of the properties surveyed predate the 1994 amendment lacks merit.  The date of the nearby structures is immaterial to DEP's determination that the proposed project would be visually compatible with the existing aesthetics.

Blackridge's argument that under the Redevelopment Plan Amendment, Long Branch "no longer required adherence to the [SRD] Rule" and the DEP

simply decided that "it would not either" is without merit. The Redevelopment Plan Amendment did not "eliminate" the SRD Rule standards for the 290 Ocean property, because no such standards existed to eliminate. Rather, the DEP determined the property was within the RDZ, and as such, the SRD did not apply. There is sufficient credible evidence in the record to support the DEP's decision to grant 290 Ocean the CAFRA permit as the DEP also determined the applicable Redevelopment Ordinances complied with the CZM.

IV.

Blackridge next asserts by issuing the permit and not applying the SRD, the DEP impermissibly waived one of its own regulations in contravention of Dragon v. N.J. Dep't of Env't Prot., 405 N.J. Super 478, 492 (App. Div. 2009). Moreover, Blackridge argues under the holding in Dragon that "CAFRA does not give [the] DEP either the express or implied power to authorize non-compliant development in a settlement agreement."

In Dragon, we held that the DEP cannot use its litigation settlement process to waive strict compliance with its substantive CZM in order to circumvent CAFRA's permitting requirements. Id. at 492. We made clear in Dragon that the decision did not concern the DEP's "power to enter into

settlement negotiations" but that a settlement cannot be used as a means of circumventing substantive permitting requirements.  Ibid.

Blackridge's reliance on Dragon is misplaced.  In Dragon, the defendant's CAFRA permit was initially denied by the DEP, also a defendant in the case, but then a settlement was executed between the permit applicant and the DEP. Id. at 485-87.  The DEP then issued a "Letter of Authorization" ("LOA"), in lieu of a CAFRA permit, approving appellant's plan to reconstruct his property.  Id. at 486-87.  We held the "DEP lacked the authority, express or implied, to issue a LOA based on an executed settlement agreement 'in lieu of a [CAFRA] permit.'"  Id. at 498 (alteration in original).  However, we also noted "settlement negotiations may result in a 'permit' being issued."  Id. at 497.

Here, DEP entered into a Settlement Agreement with 290 Ocean, which the Dragon holding does not prohibit.  It stipulated the property was located in the RDZ but was not subject to a LBRZP due to the October 15, 2020, amendment.  It further stipulated the property fell under the Redevelopment Ordinances, which do not require the open view corridor and setbacks set forth in the SRD.  Thus, the DEP did not waive its own rules.  Rather, it determined the property was in the RDZ, and because of that, 290 Ocean did not need to comply with the SRD.  This is contrary to Dragon where we found the proposed

expansion of the existing footprint did not comply with the applicable rules.  Id. at 492.

V.

Finally, Blackridge contends fundamental fairness and equal protection require reversal because Blackridge built its apartment building in compliance with the SRD, but that 290 Ocean has been permitted to skip the same constraints.

Our Supreme Court has noted that "[a]ny administrative agency in determining how best to effectuate public policy is also limited by applying principles of fundamental fairness."  State, Dep't of Env't. Prot. v. Stavola, 103 N.J. 425, 436 n.2 (1986).  And if "specific parties are particularly affected by a proposed rule, fair play and administrative due process dictate that an agency must conscientiously concern itself with and make reasonable efforts to accommodate the rights and interests of the affected individual and genuinely account for the individualized effect of its proposed action."  Bally Mfg. Corp. v. N.J. Casino Control Comm'n, 85 N.J. 325, 345 (1981) (Handler, J., concurring).

Here, Blackridge received due process and fundamental fairness.  At each step of the CAFRA application process, notification was published in the DEP

Bulletin, and a public comment period was opened. Blackridge took advantage of the public comment period at each step by submitting its objections to the permit application and the Settlement Agreement and then filing its request for an adjudicatory hearing. DEP communicated with Blackridge at each step and provided Blackridge with an abundance of information regarding the proposed project, which is evidenced by the numerous emails exchanged between Blackridge and DEP.

Moreover, we have recognized the class-of-one theory when the facts support it. Radiation Data, Inc. v. N.J. Dep't of Env't Prot., 456 N.J. Super. 550, 562 (App. Div. 2018). To prove a violation of equal protection under a class-of-one theory, the plaintiff must show: (1) the defendant intentionally treated the plaintiff differently from others similarly situated; and (2) no rational basis existed for the difference in treatment. Ibid.

Here, Blackridge's equal protection argument lacks merit. Blackridge's basis for its argument is that it was treated differently from 290 Ocean because it complied with the requirements of the SRD. This argument fails because Blackridge has not shown in any way how it was treated differently from 290 Ocean in the CAFRA permit process. Blackridge never asserts, nor is there anything in the record suggesting, that it tried to obtain a CAFRA permit by

claiming its property fell within the RDZ such that Blackridge did not have to meet the requirements of the SRD. Blackridge only contends that it complied with the SRD. Thus, Blackridge was not intentionally treated differently than 290 Ocean, nor was Blackridge similarly situated when applying for its respective permits. Blackridge simply chose to submit its permit application in compliance with the SRD.

Further, the DEP provided a rational basis for its decision. The DEP determined that, under the 2020 amendment, the property fell within the RDZ, which was governed by the Redevelopment Ordinances, not the SRD. Further, when reviewing the revised setback survey, the DEP concluded that 290 Ocean's proposed project would not be visually incompatible with the surrounding structures.

We have considered all other points raised by Blackridge and conclude they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0246-23