**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3362-23
A-3391-23
A-3710-23
A-3789-23
A-3791-23
A-3850-23
A-3898-23
A-4045-23
A-0097-24
A-0102-24
A-0103-24
A-0271-24
A-1801-24
A-1802-24

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

H.V.,[1]

     Defendant-Respondent,

and

W.D., deceased,

| APPROVED FOR PUBLICATION |
| :---: |
| **June 16, 2026** |
| **APPELLATE DIVISION** |

---

[1]  We use initials to protect privacy of the families' identities.  R. 1:38-3(d)(12).

Defendant.

_____

IN THE MATTER OF I.V.,
a minor,

     Appellant.

_____

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

D.K.L.H., deceased,

     Defendant,

and

T.T.H., SR.,

     Defendant-Respondent.

_____

IN THE MATTER OF T.T.H.,
JR. and C.C.P.H., minors,

     Appellants.

_____

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

A.D.,

     Defendant-Respondent,

and

A.H., deceased,

     Defendant.

_____

IN THE MATTER OF A.R.H.
and A.H., minors,

     Appellants.

_____

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

C.J., deceased and
R.A., deceased,

     Defendants.

_____

IN THE MATTER OF C.J.
and A.K.A., minors,

     Appellants.

_____

IN THE MATTER OF M.V.

A-3362-23

_____

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

J.L.P. and B.J.W.,

     Defendants-Respondents.
_____

IN THE MATTER OF J.C.P.,
J.E.P., and J.M.P., minors,

     Appellants.
_____

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

S.D., deceased, B.S., and
A.M.,

     Defendants-Respondents.
_____

IN THE MATTER OF M.M.,
a minor,

     Appellant.
_____

4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

J.G., JR., D.P., and H.G.,

     Defendants-Respondents,

and

R.F.,

     Defendant.

_____

IN THE MATTER OF J.G., III
and I.G., minors,

     Appellants,

and

H.G., a minor,

     Respondent.

_____

     Argued April 14, 2026 – Decided June 16, 2026

     Before Judges Sumners, Susswein and Augostini.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FN-19-0011-23, Monmouth County, Docket Nos. FN-13-0056-22 and FN-13-0147-22, Somerset County, Docket No. FN-18-0124-22,

Hudson County, Docket No. FC-09-0184-20, Ocean County, Docket No. FN-15-0045-23, Bergen County, Docket No. FN-02-0021-23, and Cumberland County, Docket No. FN-06-0087-23.

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellant I.V. in A-3362-23 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel and on the briefs; Todd Wilson, Designated Counsel, on the briefs).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellants T.T.H. and C.C.P.H. in A-3391-23 and A-3850-23 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel and on the briefs).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellants A.R.H. and A.H. in A-3710-23 and A-3898-23 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel; Jennifer M. Sullivan, Assistant Deputy Public Defender, of counsel and on the briefs).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellants C.J. and A.K.A. in A-3789-23 and A-3791-23 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel and on the briefs; Todd Wilson, Designated Counsel, on the briefs).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellant M.V. in A-4045-23 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel; Neha Gogate, Assistant Deputy Public Defender, of counsel and on the briefs).

6

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellants J.C.P., J.E.P., and J.M.P. in A-0097-24, A-0102-24, and A-0103-24 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel and on the briefs).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellant M.M. in A-0271-24 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel and on the briefs; Neha Gogate, Assistant Deputy Public Defender, of counsel and on the briefs).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for appellants J.G., III and I.G. in A-1801-24 and A-1802-24 (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel; Daniel L. J. Adamek, Assistant Deputy Public Defender, of counsel and on the briefs).

Adrienne Kalosieh, Assistant Deputy Public Defender, argued the cause for respondent H.V. in A-3362-23 (Jennifer N. Sellitti, Public Defender, attorney; Adrienne Kalosieh, of counsel and on the brief).

Jennifer N. Sellitti, Public Defender, attorney for respondent A.D. in A-3710-23 and A-3898-23 (Richard Foster, Deputy Public Defender, of counsel and on the brief).

Jennifer N. Sellitti, Public Defender, attorney for respondent J.L.P. in A-0097-24, A-0102-24, and A-0103-24 (T. Gary Mitchell, Deputy Public Defender, of counsel and on the brief).

Adrienne Kalosieh, Assistant Deputy Public Defender, argued the cause for respondent H.G. in A-1801-24 and A-1802-24 (Jennifer N. Sellitti, Public Defender,

attorney; Adrienne Kalosieh, of counsel and on the brief).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency in A-3362-23 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Michelle McBrian, Deputy Attorney General, on the briefs).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency in A-3391-23 and A-3850-23 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the briefs).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency in A-3710-23 and A-3898-23 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Julia B. Colonna, Deputy Attorney General, on the briefs).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency in A-3789-23 and A-3791-23 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the briefs).
Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency in A-4045-23 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of

8

counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency in A-0097-24, A-0102-24, and A-0103-24 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the briefs).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent in A-0271-24 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the briefs).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent in A-1801-24 and A-1802-24 (Jennifer Davenport, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the briefs).

Randi Mandelbaum argued the cause for amici curiae Rutgers Child Advocacy Clinic, and Advocates for Children of New Jersey (Rutgers Child Advocacy Clinic, and Advocates for Children of New Jersey, attorneys; Randi Mandelbaum, Mary E. Coogan, Jared M. H. Flanery, and Meghan K. Knapp, on the briefs).

Mitchell Y. Mirviss (Venable LLP) of the District of Columbia and Maryland bars, admitted pro hac vice, argued the cause for amici curiae Children's Advocacy Institute, Children's Rights, Facing Foster Care in Alaska, Juvenile Law Center, Lawyers for Children, Legal Aid Society, National Center for the Rights of Abused Children, National Foster Youth Institute, and Nebraska Appleseed Center for Law in the Public

Interest in A-1801-24 and A-1802-24 (Mitchell Y. Mirviss, attorney; Mitchell Y. Mirviss, Jessie F. Beeber (Venable LLP) of the New York bar, admitted pro hac vice, and Stephanie P. Diu (Venable LLP) of the New York bar, of counsel; Patrick J. Boyle and Michael A. Guerra, on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

In these fourteen appeals, which were calendared back-to-back, argued together, and consolidated for purposes of issuing a single opinion, we are asked to determine whether the Division of Child Protection and Permanency (Division), in its capacity as representative payee designated by the Social Security Administration (SSA), can use the fourteen minors' Supplemental Security Income (SSI) or Old Age, Survivors, and Disability Insurance (survivor) benefits (collectively, Social Security benefits) to reimburse itself for the maintenance costs incurred for the minors' care and custody.

The eight Family Part courts issued orders dismissing the minors' motions to terminate the Division's reimbursement practice. The courts, in various ways, determined that: (1) they lacked subject matter jurisdiction because the issue was preempted by the Social Security Act (the Act); (2) the Division's practice does not violate state law; (3) the minors' due process rights were not violated by the Division's failure to notify them of its intent to use their Social Security benefits for reimbursement; and (4) the minors' equal

10                                                                    A-3362-23

protection rights were not violated when the Division used their Social Security benefits for reimbursement but did not seek reimbursement from minors without Social Security benefits. We affirm the dismissal orders but take a different path in doing so.

We disagree with the trial courts' determination that federal law preempts state court review. Several states, including New Jersey through N.J.S.A. 9:6B-7, have enacted laws specifying how, if at all, their administrative agencies can use the Social Security benefits of minors under state care and custody for reimbursement of maintenance costs, and the Supreme Court of the United States has approved of such practices. Because Congress's intent to fully occupy the field is not clear from federal law, and family law is an area of law traditionally regulated by states, state courts can review the minors' claims against the Division.

We, however, agree with some of the trial courts' determinations that the Division's actions did not violate state law. Until the recent enactment of N.J.S.A. 9:6B-7, effective December 1, 2026, state law has not prohibited the Division's reimbursement efforts. See L. 2025, c. 162 § 1. And although N.J.S.A. 30:4C-30 requires the State to bear the cost of maintenance for children under its care and custody, N.J.S.A. 30:4C-22 allows the Division to apply funds—other than earned income, the corpus of a trust, devise or

11

intestate share, insurance proceeds or a personal injury award—to offset maintenance expenses for a child under its custody, care, guardianship, or placed in a resource family home. We hold that SSA representative payee accounts are not trust accounts and are not excluded as a permissible source of reimbursement.

Furthermore, we conclude that the minors' due process and equal protection claims lack merit. The Division's failure to provide advance notice of its intent to file a representative payee application does not violate the minors' due process rights because the risk of erroneous deprivation is low, the current procedures afford sufficient notice, and additional procedures would not affect a minors' eligibility for benefits. As for the equal protection claim, the minors do not show that they are similarly situated to the proposed comparator groups because the alleged distinctions are created by the Act not the Division. Moreover, the Division's policy survives rational basis scrutiny as the State has a legitimate interest in the policy which is rationally related to the classification it has created.

I.

We briefly summarize the undisputed factual and procedural background involving each minor appellant:

I.V., A-3362-23:  Survivor Benefits

I.V. was born on May 6, 2008 to H.V. (mother) and W.D. (father). Following W.D.'s death in January 2020, I.V. began receiving survivor benefits under the Act. On July 19, 2022, the trial court issued an order approving I.V.'s removal and granting the Division's application for ongoing care, custody, and supervision of I.V. H.V. consented to the trial court's order, and the Division placed I.V. in the care of L.L. (maternal grandmother).

In October of 2022, the SSA granted the Division's application to be appointed I.V.'s representative payee. About two months later, the SSA denied L.L.'s application to become I.V.'s representative payee, stating "it would be best for [I.V.] to have his checks sent to another payee." The Division later used I.V.'s survivor benefits to offset maintenance costs for his care.

Subsequent efforts by I.V. to prevent the Division from using his survivor benefits to offset maintenance costs and to have L.L. or H.V. become his representative payee culminated in an April 24, 2024 court order denying I.V.'s reconsideration motion. The court reiterated its denial of I.V.'s requested relief in its August 9, 2023 order dismissing his motion without prejudice because he had not exhausted administrative remedies under the Act. The court noted in its oral decision that the Division "was not acting in [I.V.'s] best interests" and that the funds "should be held in trust for [I.V.]" but it was

13

constrained by the procedural requirements under the Act. On May 15, 2024, the court issued an order and oral decision terminating the litigation.

T.T.H., JR. and C.C.P.H., A-3391-23 & A-3850-23: Survivor Benefits

T.T.H., Jr., born October 28, 2008, and C.C.P.H., born July 10, 2011, are the sons of D.H., their mother, who died in October 2021. Three days after D.H.'s death, the trial court granted the Division's request for custody and care of the children at an order to show cause hearing. The minors' father had previously been ordered not to have contact with them.

On January 23, 2022, the SSA approved the Division's application to serve as the minors' representative payee. The Division applied the funds to their maintenance expenses and held any excess money on their behalf in interest-bearing accounts.

On July 9, 2023, T.T.H., Jr. and C.C.P.H. filed a motion seeking that the court: require the Division to cease using their survivor benefits to reimburse maintenance costs and return all funds; prevent the Division from objecting to the maternal grandmother's application to serve as their representative payee; and compel an accounting of the survivor benefits it received.

On January 12, 2024, the trial court issued an order and statement of reasons denying the minors' motion, finding that "federal preemption prevent[ed] [it] . . . from granting the [requested] relief." Three months later,

A-3362-23

the court denied their reconsideration motion and granted the minors' application for a stay of the disbursement of any SSI funds pending appeal.

On June 24, the court issued an order and oral decision terminating litigation and granting Kinship Legal Guardianship (KLG) to the maternal grandmother.

A.R.H. and A.H., A-3710-23:  Survivor Benefits

A.R.H., born January 16, 2008, and A.H., born September 2, 2013, are the children of A.D., the mother, and A.H., the father.  A.H. passed away in September 2018, and A.D. was designated as the representative payee of the minors' survivor benefits.

On January 26, 2022, the Division removed the children from their mother's care due to physical abuse and substance abuse issues and placed them with a paternal uncle.  Two days later, the court issued an order and oral decision placing the children in the Division's custody.

On June 29, the SSA approved the Division's application to serve as the minors' representative payee.  The minors subsequently moved to enjoin the Division from using their survivor benefits to reimburse maintenance costs, return the benefits that had been applied to maintenance costs, and provide an accounting of the benefits received.

On May 30, the trial court issued an order and written decision denying the minors' motion, finding that their arguments were preempted by federal law, and dismissing their due process and equal protection arguments based on Guardianship Estate of Keffeler v. State (Keffeler III), 88 P.3d 949 (Wash. 2004). Three weeks later, the court issued an order terminating litigation because the minors were placed in the care of their maternal grandparents.

C.J. and A.K.A., A-3789-23 & A-3791-23: Survivor Benefits

C.J., born September 27, 2007, and A.K.A., born April 6, 2009, share a mother but have different fathers. Their mother passed away in May 2022.

On June 27, 2022, the trial court granted the Division's application for custody and care of the minors. A few months later, the SSA approved the Division's application to serve as the minors' representative payee.

On April 29, 2024, the minors moved to have the Division cease using their survivor benefits to reimburse maintenance costs, objected to the maternal grandmother's appointment as representative payee, requested the return of the benefits, and asked for an accounting of the benefits received. The trial court denied the motion in a June 4 order and a statement of reasons finding that it lacked jurisdiction over federal claims but granted the minors' accounting demands. Two weeks later, the trial court issued a written order terminating litigation and granting KLG to the maternal grandmother.

16

M.V., A-4045-23:  Survivor Benefits

M.V. was born on August 28, 2018.  His father passed away almost two months before his birth.

On February 25, 2020, M.V. was removed from his mother's custody due to her substance abuse.  Three months later, the SSA approved the Division's application to serve as the minor's representative payee.

A February 22, 2022 court order placed M.V. under the Division's guardianship, which was affirmed on appeal.  N.J. Div. of Child Prot. & Permanency v. T.M., No. A-2072-21 (App. Div. Apr. 11, 2023) (slip op. at 17).

Following a court-ordered accounting of the Division's use of the survivor benefits, M.V. moved on December 21, 2023, to compel the Division to return $15,870 it withdrew from his payee account while he was in placement.  On July 11, 2024, the trial court issued an order and oral decision denying M.V.'s motion, finding that he failed to show there was "an excess of funds that should have been set aside for [him] in a[n] [interest bearing account]" since the monthly reimbursement cost was $763 and exceeded the monthly SSI benefits of $411.  Although the trial court didn't address federal preemption, it reasoned that the Division's actions complied with the Act.

That same day, the trial court terminated the litigation because M.V. was adopted by his paternal aunt.

J.C.P., J.E.P., and J.M.P., A-0097-24, A-0102-24 & A-0103-24: SSI Benefits

J.C.P., J.E.P., and J.M.P. are triplets with multiple disabilities born on February 19, 2013. The SSA found them eligible for SSI benefits on January 24, 2023.

On November 18, 2022, the trial court approved the Division's emergent removal and placed the children in the Division's custody. Two months later, the SSA approved the Division's request to serve as the minors' representative payee in place of their mother. At a permanency hearing on April 10, 2024, where the Division sought to have the triplets adopted by their resource parents, the minors requested that the court bar the Division from using the children's SSI benefits to offset maintenance costs.

On July 29, 2024, the trial court issued an order and oral decision denying the minors' motion to: bar the Division from using their SSI benefits to offset maintenance costs; place the SSI benefits in an account; and require the Division to provide notice to the court and minors prior to using SSI benefits for reimbursement. The trial court reasoned that it lacked jurisdiction to hear federal claims. The court also terminated the litigation and ordered

that the Division retain legal custody of the minors, and the resource parents retain physical custody of them.

M.M., A-0271-24:  Survivor Benefits

M.M. was born on August 15, 2006.  Her mother passed away on September 29, 2018.

On July 19, 2022, the Division obtained custody of M.M. and placed her in a non-relative resource home.  Two months later, the SSA approved the Division's request to become the M.M.'s representative payee.

On June 7, 2024, the trial court denied M.M.'s motion to stop the Division from using her survivor benefits for reimbursement purposes but granted her request that the Division provide an accounting of her survivor benefits and required the Division to assist her in becoming her own representative payee.  The trial court reasoned that the Division's practice "no matter how abhorrent it may seem," was authorized under New Jersey law. The trial court also denied M.M.'s request for the Division to open a separate account as moot.

J.G., III and I.G., A-1801-24 & A-1802-24:  SSI benefits

On December 5, 2017, H.G., the paternal grandmother, obtained care and custody of J.G., III, born June 16, 2006, and I.G., born July 26, 2009, who are disabled and were removed from their mother's care due to concerns of

neglect. In June 2023, the Division emergently removed the children from H.G.'s home and placed them in the Division's custody. Four months later, the Division's application to the SSA to become the minors' representative payee was approved.

On April 16, 2024, H.G. moved for the court to order the Division to pay over $6,000 of her past bills because she was dependent on the children's SSI benefits. The court issued a written order and oral decision requiring the Division to pay H.G.'s mortgage, car payment, and utility costs. The Division moved for a stay and reconsideration of the order; the court reversed its order in part rescinding the requirement to pay H.G.'s car loan.

On April 19, the trial court issued a written order requiring the Division to provide "particularized accounting" of its use of the children's SSI funds. After J.G., III and I.G. were reunited with H.G., on March 15 and June 6, respectively, the Division notified the SSA that it was no longer the children's legal custodian, relinquished its payee status, and returned the children's conserved funds to the SSA.

On June 7, J.G., III and I.G. filed a motion seeking: (1) the Division to repay the SSI funds it used to offset maintenance costs; and (2) provide a final accounting of its use of the children's SSI benefits. After a motion hearing on September 3, the trial court issued a written order and oral decision on

A-3362-23

September 20, denying the minors' motion without prejudice. The trial court reasoned that because the minors' arguments were preempted by federal law, it lacked jurisdiction to hear the federal claims, and the Division's actions were permitted under New Jersey law. On January 6, 2025, the court issued an order and oral decision terminating the litigation because the children were returned home and conditions had been remediated.

## II.

To avoid a repetitive and unnecessary recitation of each trial court's decision, we summarize them except to highlight a particular court's reasoning.

In denying the minors' requests to cease the Division's use of their Social Security benefits and to refund those benefits, seven of the eight trial courts found that they lacked jurisdiction due to federal preemption. Because 42 U.S.C. § 405(a) vests in the SSA Commissioner the exclusive "authority to make rules and regulations . . . necessary or appropriate to carry out such provisions" of the Act, the trial courts determined that our state courts have no lawful authority under New Jersey law to monitor the Division's use of Social Security benefits as the minors' representative payee. Federal preemption was also evident when the United States Supreme Court recognized that "a [representative] payee must expend funds 'only for the use and benefit of the beneficiary,' in a way that the payee determines 'to be in the [beneficiary's]

21

best interest.'" <u>Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler (Keffeler II)</u>, 537 U.S. 371, 376 (2003) (second alteration in original) (quoting 20 C.F.R. §§ 404.2035(a), 416.635(a)). Six of the eight trial courts also relied on a Maryland Court of Appeals decision, <u>In re Ryan W.</u>, 76 A.3d 1049, 1061-63 (Md. 2013), which held that amendments to the Act enhancing the "'monitoring of institutional representative payees'" and giving federal remedies for the misuse of Social Security benefits indicate federal preemption over "'disputes regarding the allocation of benefits by representative payees.'"

Six of the eight trial courts dismissed the minors' argument—that the Legislature's intent to prohibit the Division's reimbursement policy could be gleaned from the amendment to N.J.S.A. 9:6B-4. part of the Child Placement Bill of Rights (CPBR). That amendment, effective January 16, 2024, requires the Division to notify a child in its care of the Division's "intent to file for federal benefits on the child's behalf." N.J.S.A. 9:6B-4(z). The amendment was considered by the six courts as merely authorizing them to enforce the Division's obligation to provide notice to a child under its care, custody, and supervision.

Two trial courts viewed the primary issue as a failure to exhaust the administrative remedies provided in 42 U.S.C. § 405(b), and three viewed the

issue as one of misuse. One court cited an Indiana Court of Appeals decision, Randall v. Woodson, 212 N.E.3d 691, 693, 696 (Ind. Ct. App. 2023), where a trust beneficiary sued an individual acting as representative payee to recover misused Social Security benefits, and the court found the claims preempted by 42 U.S.C. § 1383, which is "directed at preventing, identifying, and rectifying the misuse of benefit funds by representative payees." Id. at 695.

Trial courts that addressed the merits of the minors' claims determined that the Division's reimbursement policy did not violate state law. Although the policy was considered unfair to the minors, there was no law preventing it. In fact, N.J.S.A. 30:4C-22, was seen as conferring to the Division the control over the minors' assets and the ability to use them to cover their maintenance costs.

As for the trial court that addressed the state constitutional equal protection and due process claims, it relied on the Washington Supreme Court's opinion in Keffeler III. The equal protection claims were dismissed because "there was only one group of foster children" and the Division was using the Social Security benefits "lawfully under state and federal laws and regulations." Keffeler III, 88 P.3d at 954. Therefore, the trial court reasoned, the minors were not treated differently from others under the Division's care and custody who have assets from jobs or inheritance that are used to offset

23

maintenance costs. The court did not directly address the minors' due process claims regarding failure to provide notice of the Division's reimbursement measures, but relied on the reasoning in Keffeler III, which held that the "federal notice sent to beneficiaries and their guardians is sufficient to fulfil any procedural due process rights the children may have." 88 P.3d at 956.

III.

Our resolution of these appeals turns on: (1) whether state courts have jurisdiction to decide if the Division can use minors' Social Security benefits to reimburse the agency for the maintenance costs of their care, custody and supervision; and if so, (2) whether the Division's reimbursement actions violate state law or constitutional due process and equal protection rights. We address these issues in turn.

IV.

FEDERAL PREEMPTION

Arguments

The minors aver that the trial courts erred in holding that the courts lack jurisdiction over their Social Security benefits claims. They emphasize that a family court's inherent equitable parens patriae authority allows it to intervene and override the Division's policy of using Social Security benefits to offset maintenance costs. See Hoefers v. Jones, 288 N.J. Super. 590, 607-08 (App.

24

Div. 1994). They contend that the Child Placement Review Act, N.J.S.A. 30:4C-50 to -65, and the CPBR authorize the family court to intervene and protect the child's best interests, which is the situation here.

The minors[2] assert that the Act does not preempt New Jersey law because they are not claiming the Division misused their Social Security benefits, which falls under the purview of the SSA and not state court. The dispute here, the minors contend, is whether New Jersey law prohibits the practice. The minors contend that the trial court misinterpreted 42 U.S.C. § 405(a) as preempting New Jersey law because although the Act's regulations govern the designation of representative payees and the scope of their fiduciary duties, the regulations are silent on whether a state can utilize Social Security benefits to reimburse itself for a minor's maintenance costs. See 42 U.S.C. § 405(j)(1)(A); 20 C.F.R. § 404.2035(a).

The minors[3] also argue that there are no federal statutes or regulations providing an equitable remedy for the Division's actions in utilizing SSI benefits to offset maintenance costs. For instance, the minors allege "restitution against state or local government agencies who serve as

---

[2] M.V. did not address federal preemption in his brief.

[3] M.V. did not address federal remedies for misuse of SSI benefits in his brief.

representative payees" is precluded per 42 U.S.C. § 405(j)(7)(A), which governs misuse of funds. Thus, the minors contend the Division's reimbursement policy should be reviewable by a state court to prevent the Division from being immune from liability and to hold the Division accountable to the minors.

Lastly, the minors contend the courts' reliance on Keffeler II and Ryan W. are misplaced because those cases are distinguishable from the present matter. They note that the state statutes implicated in Keffeler II and Ryan W. expressly required the Division to use Social Security benefits to offset maintenance costs, whereas here, they argue New Jersey law, prior to the enactment of N.J.S.A. 9:6B-7, prohibited it. Moreover, the minors argue Keffeler II is distinguishable because it focused on whether maintenance costs amounted to an "execution, levy, attachment, garnishment, or other legal process" under 42 U.S.C. § 407(a), whereas here, the minors challenge the Division's maintenance costs based on New Jersey law. 537 U.S. at 382. The minors contend that the Supreme Court's analysis in Keffeler II affirming Washington State's reimbursement practice was dicta, and its discussion on the best interests of the child implicated Chevron[4] deference to the SSA, which has

---

[4] Chevron, U.S.A., Inc., v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

A-3362-23

since been overruled in <u>Loper Bright Ent. v. Raimondo</u>, 603 U.S. 369 (2024), and is thus not binding.  The minors add that, to the extent the Supreme Court's approval is relevant, it indicates "consideration of state law is essential to the ultimate determination on this issue."

Amici Rutgers Law School Child Advocacy Clinic and Advocates for Children of New Jersey present no argument regarding federal preemption. Amici Child-Advocacy Organizations[5] agree with the minors' contention that the Act does not preempt New Jersey law and that the minors are not required to exhaust federal remedies before bringing a claim in state court.

The Division contends that "[c]ongressional intent to preempt state jurisdiction and fully occupy the field in this case is 'clear and manifest.'"  <u>See</u> <u>Health Maintenance Org. of New Jersey, Inc. v. Whitman</u>, 72 F.3d 1123, 1127 (3rd. Cir. 1995).  It argues that the minors' claims are subject to federal preemption because they constitute allegations of misuse of benefits, which, under the Act's comprehensive statutory and regulatory scheme, are expressly resolved by the SSA and, thereafter, federal court.  Thus, minors must exhaust the administrative remedies set forth in the SSA.

---

[5]  These organizations are comprised of the Children's Advocacy Institute, Children's Rights, Facing Foster Care in Alaska, Juvenile Law Center, Lawyers for Children, Legal Aid Society, National Center for the Rights of Abused Children, National Foster Youth Institute, and Nebraska Appleseed Center for Law in the Public Interest.

The Division asserts that other states' laws addressing their use of Social Security benefits do not invite federal preemption because the laws were "carefully crafted to fall well within the benefit use permitted under federal law" and do not "attempt to confer jurisdiction onto state courts to resolve claims of benefit misuse," which is the case here. The Division argues that despite its parens patriae role over the minors, state court jurisdiction is not conveyed over allegations that it misused their Social Security benefits as their representative payees. State court jurisdiction, according to the Division, is not conferred by the requirement under N.J.S.A. 9:6B-4(z) that minors be notified of the Division's plan to be appointed as representative payee of their Social Security benefits. The Division rebuts the minors' claim that the Act provides no remedy, arguing that it explicitly precludes liability from governmental agency payees like the Division, pointing to 42 U.S.C. §§ 405(j)(5), 1383(a)(2)(E), which it argues requires the SSA to "repay[] the funds to the beneficiary in full in the case of misuse by an agency payee regardless of whether the SSA recoups the misappropriate[d] funds."

The Division counters the minors' claims that the Supreme Court's ruling in Keffeler II approving of Washington State's reimbursement policy is dicta and overruled by Loper Bright. It argues that the Court "analyzed the statutory text and related rules and regulations" out of "its own volition." The Division,

A-3362-23

quoting Smith v. Berryhill, 587 U.S. 471, 486 (2019) (internal citation omitted), argues that Chevron deference was "premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps.'"  In Keffeler II, the only "ambiguity the Court resolved concerned the proper interpretation of the phrase 'other legal process.'"  See Keffeler II, 537 U.S. at 383.  By contrast, the agency contends, the Court's findings on benefit use, payee accounting, beneficiary rights and best interests, were based on its own independent analysis of the laws governing the SSA and not the SSA Commissioner's ruling.

Social Security Benefits

The SSA Commissioner has the "full power and authority to make rules and regulations and to establish procedures . . . necessary or appropriate to carry out" the Act.  42 U.S.C. § 405(a).  Here, there are two distinct Social Security benefits—SSI and survivor benefits—that the minors are entitled to which the Division received as their appointed representative payee and used to reimburse maintenance costs expended for their care.

Nine of the minors receive survivor's benefits under Title II, 42 U.S.C. §§ 401-34, from "the earnings record of an insured person . . . who has died" because they are the dependent child of an insured decedent, are unmarried, and under the age of eighteen or permanently disabled.  20 C.F.R. §

29

404.350(a); 42 U.S.C. § 402(d). SSI benefits under Title XVI, 42 U.S.C. §§ 1361-71, are "for aged, blind, or disabled individuals, including children whose income and assets fall below . . . $2,000." Keffeler II, 537 U.S. at 375 (citing 42 U.S.C. §§ 1381-82; 20 C.F.R. § 416.1205(c)). SSA regulations provide that a representative payee, approved by the SSA, may receive the "[survivor] and SSI benefits directly, [and] may distribute them 'for [a beneficiary's] use and benefit' to another individual or entity. . . .'" Id. at 376 (alteration in original) (quoting 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(ii) (I)). Anyone may contest the appointment of a representative payee and is "entitled to a hearing by the Commissioner of Social Security, and to judicial review of the Commissioner's final decision." 42 U.S.C. §§ 1383(a)(2)(B)(xi), 405(j)(2)(E)(i). Judicial review shall be in a federal district court. 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference).

A representative payee must use the benefits "in a manner and for the purposes he or she determines, under the guidelines . . . to be in [the beneficiary's] best interests." 20 C.F.R. §§ 404.2035(a), 416.635(a). Regulations allow payments to be used for "the beneficiary's current maintenance." 20 C.F.R. §§ 404.2040(a)(1), 416.640(a). "Current maintenance" is defined as including "cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." Ibid.

"If the Commissioner . . . or a court of competent jurisdiction determines that a representative payee has misused any individual's benefit paid to such representative payee," certification for payment of benefits must be revoked. 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(iii).  Misuse of benefits is defined as "any case in which the representative payee receives payment . . . for the use and benefit of another person and converts such payment, or any part thereof, to a use other than for the use and benefit of such other person."  42 U.S.C. §§ 405 (j)(9), 1383 (a)(2)(A)(iv).  "[U]se and benefit" is not defined.  <u>See</u> <u>ibid.</u> Both Titles II and XVI provide that "[i]n any case in which a representative payee that . . . is not an individual . . . misuses all or part of an individual's benefit paid to such representative payee," the SSA Commissioner must reimburse the individual or their alternative payee the amount that was misused.  42 U.S.C. §§ 405(j)(5), 1383(a)(2)(E).

A representative payee must provide an annual accounting.  42 U.S.C. §§ 405(j)(3)(A), 1383(a)(2)(C)(i).  This includes a state institution that serves as a representative.  <u>See</u> 42 U.S.C. § 405(j)(3)(B).  If it is determined that a payee has misused benefits, the Commissioner is mandated to "promptly revoke" payment to the offending payee.  42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(iii).

<u>Analysis</u>

31

A-3362-23

The preemption doctrine is rooted in the Supremacy Clause of Article VI of the United States Constitution. Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152 (1982). State law is preempted when "Congress explicitly or implicitly [sets forth] its intent to regulate a specific area to the exclusion of the states" or when "a state regulation actually conflicts or is incompatible with federal law." Piscitelli v. Classic Residence by Hyatt, 408 N.J. Super. 83, 107 (App. Div. 2009). "Express preemption is 'determined from an examination of the explicit language used by Congress.'" Giordano v. Giordano, 389 N.J. Super. 391, 395 (App. Div. 2007) (quoting Gonzalez v. Ideal Tile Importing Co., 184, N.J. 415, 419 (2005)).

Express preemption is not at issue here. Rather, the question is whether the Act's statutes and regulations provide implied preemption, which can take the form of field or conflict preemption. See ibid. Field preemption occurs "'where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" Ibid. (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)). Conflict preemption arises "'where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Ibid. That aside, there is a "presumption against preemption in

areas of traditional state regulation such as family law," which can only be overcome when "Congress has made clear its desire for pre-emption." Egelhoff v. Egelhoff, 532 U.S. 141, 151 (2001).

We conclude there is no implied federal preemption that precludes state courts from adjudicating the minors' claims. The minors argue the Division's reimbursement policy, which uses their Social Security benefits to offset the state's maintenance costs, is prohibited by state law. Contrary to the minors' argument, the trial courts and the Division frame the minors' contentions as alleging misuse of benefits. The minors, however, do not allege the Division's reimbursement practice violates 20 C.F.R. § 404.2035(a) or 416.635(a), which require that a payee use Social Security benefits for the beneficiaries' "use and benefit," or violates 42 U.S.C. §§ 405 (j)(9), 1383 (a)(2)(A)(iv), which define benefits misuse.

The United States Supreme Court's ruling in Keffeler II clearly indicates that the Division's reimbursement policy is not preempted by federal law. The Court's explicit approval of the Washington Department of Social and Health Services' reimbursement regulation, and its reversal of the Washington Supreme Court's holding that the regulation was preempted by federal law, demonstrates that Congress has left some room for states to manage Social Security benefits received as appointed representative payee for minors under

33

their care, custody, and supervision, so long as the states' laws or regulations do not conflict with the Act.  See Keffeler II, 537 U.S. at 375, 390-91.

Turning to the minors' contention that the trial courts and Division rely on non-binding dicta from Keffeler II, the Court reasoned "the case boil[ed] down to whether the [State's] manner of gaining control of the federal funds involv[ed] 'other legal process,' as [42 U.S.C. §§ 407(a) and 1383(d)(1)] use[] that term."  537 U.S. at 383.  42 U.S.C. §§ 407(a) and 1383(d)(1) protect SSI and survivor benefits from "execution, levy, attachment, garnishment, or other legal process."  Id. at 382.  After analyzing the regulations, which afforded deference to the SSA "Commissioner's interpretation of her own regulations," the Court concluded that the State's reimbursement policy did not constitute an "other legal process" as contemplated by 42 U.S.C. §§ 407(a) and 1383(d)(1).  Id. at 386-87.  Beyond that conclusion, the Court addressed the view of the minors and Washington Supreme Court that the reimbursement policy was "antithetical to the best interest of the beneficiary foster child."  Id. at 389.  It found that the policy was in the best interest of the child.[6]

---

[6]  The Court cited three reasons for its conclusion.  First, it found that the Commissioner's interpretation of the Act's requirement "that a beneficiary's 'interest . . . would be served' by the [representative payee's] appointment[,]" aligned with the "basic objectives of the Act."  Keffeler II, 537 U.S. at 389-90 (quoting 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(ii)(I)).  Second, it found that prohibiting the practice was "demonstrably antithetical . . . to the best

34

There is some merit to the minors' claim that the Court's approval of the Washington State policy is non-binding, as its resolution of the disputes did not require a finding on whether the policy was in the best interest of the minors. However, "the legal findings and determinations of a high court's considered analysis must be accorded conclusive weight by lower courts." State v. Rose, 206 N.J. 141, 183 (2011) (relying on 5 Am. Jur. 2d Appellate Review § 565 (2007) for the proposition that "matters in the opinion of a higher court which are not decisive of the primary issue presented but which are germane to that issue . . . are not dicta, but binding decisions of the court"). While the Court did rely in part on deference to the agency's interpretation of "'interest,'" it also provided its own independent reasons for approving the policy beyond the Commissioner's interpretation. Keffeler II, 537 U.S. at 389-91. Therefore, it is unnecessary to determine whether Loper Bright's rejection of Chevron deference affects Keffeler II's authority. Keffeler II does not stand for the proposition that state laws regarding the use of Social Security benefits

_____

interest of many foster care children" because their "eligibility for benefits" would be "lost if their assets cre[pt] above . . . $2,000." Id. at 390 (citing 42 U.S.C. §§ 1382(a)(1)(B), (3)(B); 20 C.F.R. § 416.1205(c)). Third, it found that prohibition of the policy would discourage many states "from accepting appointment as representative payees by the administrative costs of acting in that capacity" thereby leaving many children without access to the benefits. Id. at 391.

A-3362-23

received by representative payees for children are preempted by federal law. Additionally, Keffeler's independent analysis—particularly concerning how the policy aligns with the Act's intent and the risk of children becoming ineligible for benefits if their savings exceed the $2,000 cap—suggests guidance that such policies do not conflict with the Act. Id. at 390-91.

We disagree with the trial courts' rulings and Division's argument that the minors must exhaust administrative remedies before relying on the SSA to invalidate the Division's practice. They point to 42 U.S.C. § 405(g), which states that the review of "any final decision" of the [SSA] Commissioner "shall be brought" in federal court. (Emphasis added). Indeed, the Maryland Court of Appeals in Ryan W., which the trial courts and the Division rely on, held that the "use of the word 'shall' suggests strongly that the jurisdiction of the federal courts is exclusive" and therefore concluded that "Maryland's state courts are without concurrent subject matter jurisdiction to adjudicate disputes over the allocation of a child's [survivor] benefits by a duly appointed representative payee." 76 A.3d at 1060. However, the minors are not contesting the "final decision" of the SSA Commissioner. Instead, they are contesting a policy decision by the Division regarding how to use the minors' Social Security benefits under New Jersey law even if the reimbursement policy satisfies the "use and benefit" requirement under the Act.

36

As noted, <u>Keffeler II</u> demonstrates Congress has left open such an avenue for state courts to adjudicate the minors' claim. The exhaustion of remedies requirement should serve the interests of justice. <u>Abbott v. Burke</u>, 100 N.J. 269, 297 (1985). One such interest is to "ensure that claims will be heard, as a preliminary matter, by a body possessing expertise in the area." <u>Id.</u> at 297-98 (quoting <u>City of Atlantic City v. Laezza</u>, 80 N.J. 255, 265 (1979)). As the minors' claims are based in state law, state courts possess the required expertise.

We add that while we are not bound by precedential decisions rendered in other jurisdictions, we note a number of courts have held that states have the authority to enact laws and regulations directing its agencies to either use minors' Social Security benefits to offset minors' maintenance costs, to conserve them, or some combination of both practices.[7] And as noted, our Legislature has enacted N.J.S.A. 9:6B-7 and -8, effective December 1, 2026,

---

[7] <u>See, e.g.</u>, Ariz. Rev. Stat. § 8-468(B)(1) (department "[m]ay not use the child's federal benefits . . . to reimburse [itself] . . . for any of the costs of the child's care)"; 20 Ill. Comp. Stat. 505/5.46(d)(1) & (d)(2) (mandating the department to conserve a certain percentage of the child's federal benefits after the age of fourteen and to "[e]xercise discretion in accordance with federal law and in the best interests of the youth when making decisions to use or conserve the youth's benefits that are less than or not subject to asset or resource limits under federal law"); Md. Code, Fam. Law § 5-527.1(c)(1) to (2) (mandating the department to "use or conserve the benefits in the child's best interest" and that a certain percentage is conserved and "not used [for] reimburs[ment]" after the age of fourteen).

prohibiting the Division from using the minors' Social Security benefits for maintenance reimbursement. See L. 2025, c. 162 §§ 1-2 (codified at N.J.S.A. 9:6B-7 and -8). Consequently, any interpretation of the enactments would be subject to review in our state courts. See N.J. Const. art. VI, § 3, ¶ 2 (giving the Superior Court original general jurisdiction); Johnson v. Fankell, 520 U.S. 911, 916 (1997) (holding that even federal courts are bound by the constructions of a statute "rendered by the highest court of the [s]tate"). Defendants do not dispute our courts' ability to adjudicate claims under the new enactments, and there is no meaningful difference between future claims brought under the enactments and the minors' current claims with respect to our state courts' subject matter jurisdiction.

## V.

### STATE LAW CLAIMS

Given our conclusion that there is no federal preemption preventing our state courts from deciding whether the Division can use minors' Social Security benefits to reimburse the agency for their maintenance costs, we now address whether the Division's reimbursement policy violates state law.

Arguments

The minors contend that state law does not allow the Division to recoup maintenance costs of their care through the agency's receipt of their Social

Security benefits as their representative payee and therefore seek return of the funds. The minors assert that New Jersey law requires the Division to pay the maintenance cost of foster children under its care. See N.J.S.A. 30:4C-30 (stating that the "cost of maintenance . . . shall be borne by the State at the rate of 75% of the per capita cost of maintenance and by the county at the rate of 25% of the per capita cost for the entire year"). Further, the minors argue that New Jersey's statutory scheme does not permit the Division "to transfer its financial responsibility to provide maintenance to a child in foster care." See N.J.S.A. 30:4C-29.1 (eliminating the Division's ability to seek reimbursement for child support costs from parents); see also N.J.S.A. 30:4C-22 (allowing the Division to seek reimbursement unless the funds are subject to certain exceptions).

Regarding N.J.S.A. 30:4C-22, the minors maintain that this provision prohibits the Division's reimbursement policy because Social Security benefits are the corpus of a trust, which cannot be used as a source of funding for reimbursement. Specifically, N.J.S.A. 30:4C-22 provides the Division with "discretion . . . to apply funds" other than earned income, the corpus of a trust, devise or intestate share, insurance proceeds or a personal injury award, to offset maintenance expenses for a "child under its custody or care or ward when the child is in a resource family home." The statute's use of a broad

term, "the corpus of any trust," according to the minors, implies "that any type of trust is meant to fit within the meaning of the statute." They contend a trust is formed when the SSA transfers the benefits to the Division as trustee, and the Division must use the property to benefit them, the beneficiary. See N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr., 588 U.S. 262, 265-66 (2019).

The minors claim that the January 30, 2025 amendment[8] to N.J.S.A. 30:4C-29.1—which eliminated the duty of legally responsibly persons to pay for maintenance and vacated all pending support obligations—indicates that the Legislature did not intend to allow the Division to utilize a minor's Social Security benefits for reimbursement purposes. Allowing the Division to recoup maintenance costs through Social Security benefits, while prohibiting parental liability, "lack[s] common sense" and creates absurd results, they contend.

Amici Rutgers Law School Child Advocacy Clinic and Advocates for Children of New Jersey reiterate the minors' arguments and add that although N.J.S.A. 30:4C-22 allows the Division to seek reimbursement when it has custody or guardianship, only guardianship vests the Division with control over "the person and property of a child" under N.J.S.A. 30:4C-2(e), whereas

---

[8] See L. 2025, c. 5.

custody is limited to a "continuing responsibility for the person of a child" under N.J.S.A. 30:4C-2(d). Thus, amici argue that, even if representative payee accounts are not trust accounts and are a permissible source for reimbursement under N.J.S.A. 30:4C-22, the Division's reimbursement powers are limited to guardianship cases.

The Division contends that "a holistic view" of Chapter 4C of Title Thirty, N.J.S.A. 30:4C-1 to -105, which contains most of the child welfare statutes relevant to this appeal, allowed it to use Social Security benefits to recoup maintenance costs. For example, it points to N.J.S.A. 30:4C-31 — authorizing the Division to seek financial assistance — and N.J.S.A. 30:4C-13 — restricting the Division's care and maintenance to "the limits of legislative appropriations." The Division also notes that the 1985 amendments of N.J.S.A. 30:4C-2r and N.J.S.A. 30:4C-29.1 to -29.2 expanded its authority to recoup maintenance expenses by allowing it to bring child support actions and impose liens on "legally responsible person."

The Division views the amendment to N.J.S.A. 30:4C-29.1 as only a "limited change" that altered how it may collect child support but did not affect its longstanding practice of using Social Security benefits for reimbursement. The Division asserts its reimbursement policy protects the minors' benefits because the Act requires that a minor use their SSI benefits

for maintenance and that their income and resources not exceed $2,000 per month. See 42 U.S.C. §§ 1382(a)(1)(B) to (a)(3)(B); 20 C.F.R. §§ 416.1100, 416.1323-24. Barring the Division's reimbursement policy could disqualify minors from SSI benefits because their income and resources "would rapidly accrue beyond the $2,000 cap."

The Division refutes the minors' argument that the agency holds their Social Security benefits as a corpus of a trust, which under N.J.S.A. 30:4C-22 cannot be used to reimburse maintenance costs. The Division avers that "common law trusts are fundamentally unlike Social Security benefits," which are the "product of a Congressional enactment." See United States v. Jicarilla Apache Nation, 564 U.S. 162, 174-78 (2011) (finding that the federal government's trust obligations to Indian tribes are governed by federal statute, not common law). The Division maintains that representative payee accounts are distinct from trusts because the Social Security benefits are housed in collective savings or checking accounts, instead of trust funds, and a payee does not legally own the funds but only manages them. This is confirmed by the SSA's Programs Operations Manual System (POMS),[9] which explicitly

---

[9] Soc. Sec. Admin., SI 01120.200 Information on Trusts, including Trusts Established Prior to January 01, 2000, Trusts Established with the Assets of Third Parties, and Trusts not Subject to Section 1613(e) of the Social Security

states that representative payee accounts are not trust accounts because the payee does not have legal title to the account.

The Division points out that the Third Circuit recognized that the SSA does not treat the corpus of trust instruments as Social Security benefits. See Sable v. Velez, 388 Fed. Appx. 235, 237-38 (3d Cir. 2010) (noting that Congress amended the SSA in 1999 to prevent SSI applicants from circumventing resource requirements by placing their income in trusts).

Analysis

For several reasons, we reject the minors' and amici's argument that the Division's reimbursement policy is prohibited by state law. Even though N.J.S.A. 30:4C-30 requires the State to bear the maintenance costs for children in its care and custody, N.J.S.A. 30:4C-22 provides the Division with "full and complete . . . custody and control" over "the person and property of children in its custody or care," as well as the "discretion . . . to apply funds" other than earned income, the corpus of a trust, devise or intestate share, insurance proceeds or a personal injury award, to offset maintenance expenses for a

_____

[hereinafter SI 01120.200], https://secure.ssa.gov/poms.nsf/lnx/0501120200 (last visited May 27, 2026).

"child under its custody or care or ward when the child is in a resource family home."

Contrary to the minors' contentions, N.J.S.A. 30:4C-22 grants the Division broad authority over care, custody, and guardianship, that includes seeking reimbursement, and the provision carries narrow exceptions for reimbursement. The statute's plain language permitted the Division to seek reimbursement until N.J.S.A. 9:6B-7 was amended, effective December 1, 2026, to bar the Division's policy unless Social Security benefits had to be expended to maintain them. See Wunsch v. CTE Republicans for Englewood Cliffs, 483 N.J. Super. 231, 245 (App. Div. 2025) (omissions and alterations in original) (quoting State v. Higginbotham, 257 N.J. 260, 280 (2024)) ("[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'"); Cupido v. Perez, 415 N.J. Super. 587, 594 (App. Div. 2010) (citing Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418 (2009)) (holding that we "'apply to the statutory terms the generally accepted meaning of the words used by the Legislature'").

We find it instructive that the Legislature enacted N.J.S.A. 9:6B-7 to bar the Division's reimbursement policy unless Social Security benefits need to be expended to maintain them. The sponsors explained the enactment was needed

44

to "prohibit[] the [Division] from utilizing the . . . [Social Security] benefits of a child under the [D]ivision's custody to offset the State's costs to care for the child" and "ensure that the child's financial resources be preserved to either pay for the child's unmet needs while in an out of home placement, or save for the child's future use." Sponsors' Statement to S. 3153, (May 6, 2024).

Contrary to the minors' contention, as the Division aptly points out, using their SSI benefits to reimburse the State for maintenance costs may help preserve a minor's eligibility for benefits given that disability benefits are subject to a $2,000 asset cap. Indeed, in amending N.J.S.A. 9:6B-7, the Legislature recognized that reimbursement is justified when it seeks to preserve SSI eligibility and allowed the Division to offset SSI benefits for maintenance costs to "maintain the child's eligibility for . . . [SSI] benefits and to avoid a violation of federal asset or resource limits under the [SSI] [p]rogram."

We also agree with the Division that the minors' contention that N.J.S.A. 30:4C-22 prohibits the Division's reimbursement policy because the Social Security benefits constitute the "corpus of any trust" is without merit. The Division's acquisition of the minors' benefits is not held in a legally cognizable trust. The Restatement (Third) of Trusts explains that the elements of a trust are:

(1) a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of one or more others; (2) one or more beneficiaries, to whom and for whose benefit the trustee owes the duties with respect to the trust property; and (3) trust property, which is held by the trustee for the beneficiaries.

[Restatement (Third) of Trusts § 2 cmt. f (A.L.I. 2003).]

Comment a adds that a trust "includes public funds and public and private pension-fund arrangements in trust form" but does not clarify what constitutes a public fund. Id. § 2 cmt. a. Additionally, the Restatement states that a trustee "must have legal title" because "[w]ithout legal title the trustee holds nothing in trust." Id. § 3 cmt. b.

At first glance, SSA regulations imply that payee accounts operate like trusts. For example, 20 C.F.R. § 404.2035(a) states that representative payees must use benefits "in a manner and for the purposes he or she determines, under the guidelines . . . to be in [the beneficiary's] best interests." However, on close examination, the SSA, through POMS, explicitly provides that payee accounts are not trusts. See SI 01120.200. The policy unambiguously states that although payee accounts are "'in trust for'" accounts and their "title may misleadingly suggest that the representative payee is the legal owner of the account principal," payee accounts are "not a trust." Ibid. The policy also

46

notes that a representative payee "does not necessarily have the legal authority to establish a trust or transfer funds into a trust for the disabled individual."[10]

Considering the enactment of N.J.S.A. 9:6B-7, concluding that representative payee accounts are trusts would lead to absurd consequences. See H.K. v. Div. of Med. Assistance & Health Servs., 379 N.J. Super. 321, 328 (App. Div. 2005) (holding courts should avoid interpretation of a statute or regulation that leads to absurd results). The statute only allows the Division to utilize SSI benefits for reimbursement if it would preserve a minor's SSI eligibility. N.J.S.A. 9:6B-7. Thus, ruling that a representative payee account constitutes a trust would completely bar the Division from utilizing SSI benefits for reimbursement, even when failure to seek reimbursement would disqualify a minor from receiving the benefits. This would create absurd results by contradicting the plain meaning of the statute and subverting the Legislature's intent to allow the Division to seek reimbursement when it would preserve a child's SSI eligibility.

Lastly, we are unpersuaded by amici Rutgers Law School Child Advocacy Clinic and Advocates for Children of New Jersey's assertion that

---

[10] Soc. Sec. Admin., SI 01120.203 Exceptions to Counting Trusts Established on or after January 1, 2000, https://secure.ssa.gov/poms.nsf/lnx/0501120203 (last visited May 27, 2026).

A-3362-23

even if N.J.S.A. 30:4C-22 authorizes reimbursement, it applies only to instances where the Division has guardianship. Guardianship vests "control over the person and property of a child," N.J.S.A. 30:4C-2(e), and custody only contemplates "continuing responsibility for the person of a child," 30:4C-2(d). N.J.S.A. 30:4C-22 is clear and unambiguous—it allows the Division to reimburse itself for maintenance costs when it has "care, custody, or guardianship." Accordingly, the Division's use of the minors' Social Security benefits to reimburse maintenance costs is permissible.

## VI.

## DUE PROCESS

<u>Arguments</u>

The minors contend that the Division's application to serve as their representative payee and use of their Social Security benefits violates their right to procedural due process under the Federal Constitution and New Jersey Constitution. See U.S. Const. amend. XIV, § 2; see N.J. Const., art. I, ¶ 1. Citing Doe v. Poritz, 142 N.J. 1, 106 (1995), the minors allege that the Division's policy of applying to become representative payee frustrated their right to counsel and, in turn, deprived them of property without receiving adequate notice and a fair opportunity to be heard. They claim that under the

<u>Mathews</u>[11] test for procedural due process violations, the current procedures significantly deprive the minors of their rights, and requiring the Division to notify them of its intent to apply for representative payee status would not impose significant administrative or fiscal burdens.  The minors maintain that this is consistent with our state law recognizing an individual's right to a hearing when an agency's actions may affect his or her rights, duties, or privileges.  <u>New Jersey Div. of Youth & Fam. Servs. v. M.R.</u>, 314 N.J. Super. 390, 411 (App. Div. 1998).

The Division argues that the minors' due process argument fails "because the SSA issues the notice of the appointment pursuant to federal law and regulation," <u>see</u> 42 U.S.C. § 205(j)(2)(E)(ii); 20 C.F.R. § 404.2030(a), and New Jersey law did not require that the Division notify the minors of its application to become a representative payee at the time it was filed.  As such, "rather than seeking reimbursement from the Division," the minors should have proceeded through the SSA's administrative process.

<u>Analysis</u>

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty,

---

[11]  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).

or property, without due process of law." U.S. Const. amend. XIV, § 1. Our state constitution affords individuals a right to fundamental fairness that includes safeguards which are analogous to federal due process principles. N.J. Const. art. 1, § 1; N.J. Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464-65 (App. Div. 2003). "Due process requires adequate notice and a fair opportunity to be heard" and is a "flexible concept" that "calls for such procedural protections as the particular situation demands." M.Y.J.P., 360 N.J. Super. at 464. To determine whether a due process violation has occurred, New Jersey courts apply the Mathews test, which considers (1) the private interest affected, (2) the risk of erroneous deprivation and the value of any additional safeguards, and (3) the value of the government interest and any fiscal or administrative burdens that additional procedures would require. 424 U.S. at 335.

We favor the Washington Supreme Court's ruling in Keffeler III that the Division's failure to provide advance notice of its representative payee application did not violate procedural due process. 88 P.3d at 954-56. The Court there reasoned that the risk of erroneous deprivation was low because the notice required under the Act "notifie[d] the beneficiary . . . of the appointment prior to any payment" and allowed the beneficiary to challenge the determination. Id. at 955 Moreover, the Court reasoned that additional

50

procedures were unnecessary because a representative payee's identity does not affect a minor's eligibility for benefits, representative payees must comply with state and federal law in using benefits, and the SSA Commissioner conducts an adequate investigation of potential payees prior to appointment. Id. at 956

Even if we disagree with Keffeler III and find under the Mathews test that the Division violated due process, the minors' due process argument fails because the issue is now moot. "'An issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" N.J. Div. of Youth & Family Servs. v. J.C., 423 N.J. Super. 259, 263 (App. Div. 2011) (quoting N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 261 (App. Div. 2009)). Since we have found that the Division's reimbursement policy does not violate New Jersey law, any issues regarding due process are essentially moot. That is, requiring the Division to provide advance notice or undergo a hearing would not change the outcome of this case. Hence, we dismiss the minors' due process arguments.

VII.

EQUAL PROTECTION

Arguments

The minors contend the Division's reimbursement policy violates their rights to equal protection under the federal and state constitution. U.S. Const. amend. XIV, § 2; N.J. Const. art. I, ¶ 1. They assert their Social Security benefits are a fundamental property right, not entitlements, because the benefits had already been paid by the SSA to the minors at the time the Division sought reimbursement. They maintain the policy treats them "differently than similarly situated foster children[:] (i) with private rep[resentative] payees, (ii) with other types of property or assets[;] and (iii) without assets."

The minors argue that the Division uses their Social Security benefits "for maintenance costs, while foster youth with other assets and foster youth without assets received care for free." They contend the reimbursement policy does not further a valid state interest and "is not essential to the State's financial security" because the same practice is not applied to "foster youth with other types of resources." Further, they allege that the reimbursements do not have "any demonstrable impact on the Division's budget, [or] [its] ability to care for foster youth," and is "recognized as income to the State" rather than "reconcil[ing] [it] with the money the Division took from [the minors]."

Amici support the minors' contentions. Rutgers Law School Child Advocacy Clinic and Advocates for Children of New Jersey argue the

52

"arbitrary dispossession of the monetary benefits of vulnerable foster youth [by the Division] constitutes an even more severe breach of state constitutional property rights" than the traditional focus on eminent domain and regulatory takings. They contend the reimbursement policy is "not rationally related to a legitimate state purpose" because if discontinued "there would be no reduction in care for the foster youth" since N.J.S.A. 30:4C-27 requires funding for the minors' maintenance. Amici emphasizes that the policy "only amounts to approximately 1% of the federal funding for state foster care programs" which "would not jeopardize the Division's ability to provide maintenance to all foster youth" were it to stop.

The Division contends the minors' comparison with other foster children is misguided. Relying on Keffeler III, it argues foster children who are not eligible for Social Security benefits differ from those—such as the minors—that do. The Division stresses the "correct analysis . . . involve[s] evaluating all foster youth receiving Social Security benefits to determine whether the agency-[representative] payee invidiously discriminated against a particular youth or subset of youth from the beneficiary group." It further contends there is no evidence of invidious discrimination, which is required for an equal protection violation. David v. Vesta Co., 45 N.J. 301, 315 (1985) (holding that "the equal protection clause forbids only invidious discrimination"). Lastly,

the Division maintains that the minors' contention is wrong because it treats "all property and assets the same, even though Congress classified and treated Social Security benefits differently."  And to the extent that it treats children differently, the Division argues that the SSA requires that, as representative payee, it must apply funds to support a "beneficiary's current maintenance."

Analysis

Different standards under the federal and state constitutions govern equal protection violations.  In UAW v. Murphy, our court recently analyzed the different standards, stating:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," meaning that all persons similarly situated should be treated alike within statutory classifications. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  Legislation is generally presumed to be valid under the Equal Protection Clause if a statute's classification is "rationally related to a legitimate state interest."  Id. at 440 (citing Schweiker v. Wilson, 450 U.S. 221, 230 (1981)).

> However, that federal "rational basis" approach is qualified by what are known as "tiered" levels of scrutiny.  Under the Equal Protection Clause, if the classification affects what the United States Supreme Court has proclaimed to be a "fundamental right," or if the law at issue invidiously harms a "suspect class" of persons, then a higher level of judicial "strict scrutiny" applies.  Bush v. Gore, 531 U.S. 98 (2005) (applying strict scrutiny to classifications that infringe on the

A-3362-23

fundamental right to vote) . . . . As a further nuance of the federal tiers, for some classifications such as illegitimacy and gender, the United States Supreme Court has adopted a test of "intermediate scrutiny." Mathews v. Lucas, 427 U.S. 495 (1976) (applying intermediate scrutiny classifications based on illegitimacy); see also United States v. Virginia, 518 U.S. 515 (1996) (applying intermediate scrutiny to require a public military academy to accept women).

Our New Jersey Supreme Court has eschewed the federal Equal Protection "tiered" approach in construing the analog state constitutional right. In several instances, our courts have construed the New Jersey state constitutional principles of equal protection more expansively than their federal counterpart. See, e.g., Right to Choose v. Byrne, 91 N.J. 287, 292-93 (1982) (regarding the termination of funding for medically necessary abortions); see also Planned Parenthood [of Cent. N.J. v. Farmer], 165 N.J. [609,] 643 [(2000)] (invalidating certain parental notification laws for abortions); State v. Gilmore, 103 N.J. 508, 522-23 (1986) (invalidating the discriminatory use of peremptory challenges in jury selection). "Although conceptually similar, the right under the State Constitution can in some situations be broader than the right conferred by the Equal Protection Clause." Doe[, 142 N.J. at 93].

This more expansive approach for equal protection is in keeping with our robust tradition of at times affording greater independent constitutional protection to persons in this State and not analyzing state constitutional claims in "lockstep" with federal precedents. See, e.g., Usachenok v. Dep't of the Treasury, 257 N.J. 184, 195-96 (2024) (free speech of employees); State v. Zuber, 227 N.J. 422, 438 (2017) (sentencing of young offenders to lengthy, cruel and unusual, custodial terms); State v. Hempele, 120 N.J.

55

182, 195 (1990) (warrantless search and seizure of curbside trash).

. . . .

[T]he New Jersey equal protection balancing test considers three aspects: (1) "the nature of the affected right"; (2) "the extent to which the governmental restriction intrudes upon it"; and (3) "the public need for the restriction." [Greenberg v. Kimmelman, 99 N.J. 552, 568, (1988)] (citing Right to Choose, 91 N.J. at 308-09).

[483 N.J. Super. 414, 441-42, 443 (App. Div. 2026).]

With that said, it is well established that social welfare policies are subject to rational review. See Barone v. Dep't of Hum. Servs., 107 N.J. 355, 364-65 (1987) (applying rational basis review to the New Jersey Pharmaceutical Assistance Act that required receipt of Social Security benefits to be eligible for benefits under that statute).

As a threshold issue, we conclude that the minors and the comparator groups identified by the minors and amici are not similarly situated. "[P]ersons are similarly-situated under the Equal Protection Clause when they are alike in 'all relevant aspects.'" Radiation Data, Inc. v. N.J. Dep't of Env't Prot., 456 N.J. Super. 550, 562 (App. Div. 2018) (emphasis in original) (quoting Startzell v. City of Phila., 533 F.3d 183, 203 (3rd. Cir. 2008)). The claim that the minors are being treated differently than other foster children who have other assets or have no assets, but are not required to reimburse the

Division for maintenance costs is misguided. The minors are not similarly situated to other foster groups because the minors qualify for either SSI or survivor benefits, while the other foster children do not. This classification is not created by the Division but by federal law.

The minors are more akin to the subgroup of foster children who receive Social Security benefits but have a private payee that is not the Division. A distinction exists, but it is not sufficient to say they are not similarly situated for purposes of constitutional analysis. The distinction between foster children with the Division as appointed representative payee and those with a private representative payee is not a classification created by the Division. Rather, it is established by the SSA Commissioner, who designates the representative payee according to regulations that delineate an order of preference, placing agencies like the Division as the last to be appointed. See 20 C.F.R. §§ 404.2021(c), 416.621(c). These groups may not be similarly situated because 42 U.S.C. § 407 prohibits the Division from "directly compel[ling] the beneficiary or other any other representative payee to pay Social Security benefits over to the State." Keffeler II, 537 U.S. at 389. As such, even if it wanted to, the Division could not apply its policy to the private payee subgroup. It is not clear, however, that this is a sufficient distinction to conclude the two groups are not similarly situated. Nonetheless, even if the

proposed groups are similarly situated, the equal protection arguments still fail.

The minors and amici argue that the interest being implicated is a fundamental property right. They contend the Social Security benefits are not entitlements because when the Division applies its reimbursement policy, it has already received the benefits, which converts the money to the minors' property, thereby implicating a different set of rights.

Given that social welfare policies are subject to rational review, neither the minors nor amici have provided any case law to persuade us differently. See Pleasure Bay Apartments v. City of Long Branch, 66 N.J. 79, 93 (1974) (quoting David, 45 N.J. at 314-15) ("The constitutionality of a legislative classification is presumed, and one who assails the classification must carry the burden of showing its arbitrariness.").

Even when an individual's monetary interest is implicated, the United States Supreme Court has not always found the implication of a fundamental right in the equal protection context. For example, in Armour v. City of Indianapolis, a group of homeowners brought a federal equal protection claim against the city for adopting a policy denying them reimbursement of the homeowners' payments for sewer improvement projects. 566 U.S. 673, 676 (2012). The city had a policy of charging homeowners the cost of sewer

58

improvement projects which could be paid in a lump sum or in installments. Id. at 676-78. The city later abandoned this policy because it felt the payments had become too burdensome and forgave amounts due by homeowners for the sewer program beginning from a certain date going forward. Id. at 678. The homeowners who paid the full amount prior to the policy change were denied a refund. Id. at 679. The Supreme Court found that the matter did not implicate a fundamental right because "[i]ts subject matter [wa]s local, economic, social, and commercial." Id. at 681. It reasoned the amount homeowners paid was essentially a tax classification and "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes." Id. at 680 (alteration in original) (quoting Regan v. Taxation With Representation of Wash., 461 U.S. 540, 547 (1983)).

While the Division's reimbursement policy does not involve a tax per se, Armour demonstrates that a government's decision affecting individuals' monetary interests differently based on categories it creates does not necessarily impact a fundamental right. Moreover, the minors' Social Security benefits are unlike other property, which an individual typically has control of, because there are SSA restrictions on how the benefits can be spent. As such, the minors have not established that there is a fundamental interest or that they are a protected class, and rational basis review applies.

A-3362-23

Applying the same analysis to the minors' New Jersey equal protection claim leads to the same result. The first factor of our state balancing test— "the nature of the affected right," Greenberg, 99 N.J. at 567—suggests the interest is not substantial. The minors have no fundamental substantive right to Social Security benefits. See Flemming v. Nestor, 363 U.S. 603, 611 (1960) (holding that there is no accrued property right in Social Security benefits in the due process context). They receive the benefits through the legislative action of Congress to provide for their welfare. The remaining analysis, factors two — "the extent to which the governmental restriction intrudes upon [the right]," — and three — "the public need for the restriction," Greenberg, 99 N.J. at 567, — are subject to and easily survive rational basis review.

The Division had a valid interest in the reimbursement policy, and there is no evidence that the Division's classification was invidious or arbitrary. See Armour, 566 U.S. at 681 (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)) (noting that if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification," rational review is satisfied). As noted, the classification results from the categories which naturally result from compliance with the Act. The Act provides who is eligible for federal benefits, who can be appointed as representative payee, that payments must be used for the use and benefit of the beneficiary, which

60

includes current maintenance, and it prohibits the Division from compelling the beneficiaries or other payees to pay the benefits to the State. See supra Section II. A. FEDERAL PREEMPTION – Social Security Benefits.

Furthermore, as the Court in Keffeler II explained, the Division has a financial interest in the reimbursement policy as it subsidizes the cost of the minors' maintenance care. 537 U.S. at 390-91. Amici's claim about the fiscal impact of the reimbursement policy is unfounded and erroneous. While the income that the reimbursement policy recoups for the Division's maintenance costs represents a small amount of the Division's budget, it is not insignificant. In fact, the source amici relies on recognizing that the federal funding stream gives states "a strong incentive to seek out the children's Social Security benefits." Daniel L. Hatcher, Foster Children Paying for Foster Care, 27 Cardozo L. Rev. 1789, 1806, 1807 (2006). The New Jersey Office of Legislative Services determined that ending the reimbursement policy would cause the State's revenue to decline "by about $500,000" and increase "[s]tate expenditures by about $170,000." Legis. Fiscal Estimate for First Reprint of S. 3153 (Nov. 6, 2024).

It is undisputed that the State has "parens patriae responsibility to protect the welfare of children." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). The reimbursement policy with respect to minors

A-3362-23

receiving SSI benefits promotes the welfare of these children by ensuring that they do not lose their benefits if their assets exceed $2,000. 42 U.S.C. § 1382; 20 C.F.R. § 416.1205(c); <u>Keffeler II</u>, 537 U.S. at 390.

In sum, the Division's reimbursement policy has a legitimate interest that is rationally related to the recoupment of the minors' maintenance costs, and the policy withstands scrutiny under both the state and federal equal protection clauses.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division